Ronny Dewey WOODRUFF, et al., Appellants,

v.

James O. WRIGHT, III, M.D., et al., Appellees.

No. 06–00–00119–CV.

Court of Appeals of Texas, Texarkana.

Submitted June 12, 2001.

June 22, 2001.

James F. Twombly, Rockne W. Onstad, The Onstad Law Firm, Austin, for appellants.

Hunter T. Hillin, Hillin & Owen, LLP, Dallas, Dorothy Prengler, Kay E. Ellington, Law Offices of Joel Steed, PC, Dallas, for appellees.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

ROSS, Justice.

This is an appeal from two take-nothing summary judgments. The appellants are: Ronny Woodruff and Deronda Woodruff; Cecil Pat Davis, individually and as next friend of Jennie Mae Davis, deceased, and Clarence Gene Davis, individually and as executor of the estate of Jennie Mae Davis, deceased; Ollie Ruth Lindsey; Ella Wilkerson, individually and as executrix of the estate of Rovis Leon Wilkerson, deceased, and Michael Wilkerson, individually and as next friend of Rovis Leon Wilkerson, deceased; and Jessie Ivey and Julia Ivey. They were plaintiffs who brought a medical malpractice suit against three surgeons: James O. Wright, III, M.D., Fred S. Stockinger, M.D., and Gregory R. Hodson, M.D. At the request of the defendants, the case was divided for multiple trials on the separate claims of the various plaintiffs. The trial court dismissed the case based on limitations as to all plaintiffs and also based on a no-evidence motion for summary judgment against the Davis plaintiffs.

Appellants contend the trial court erred by: 1) rendering summary judgment based on limitations; 2) granting a no-evidence summary judgment against the Davis plaintiffs; and 3) overruling their motions to recuse the trial judge.

The plaintiffs alleged that the doctors, as part of a surgical group, failed to take basic precautions against a particular type of antibiotic-resistant infection and that as a result of that failure, their patients suffered injuries or death. Some plaintiffs were patients; others are the survivors of patients who died.

On January 24, 2000, shortly before beginning the trial involving only the Woodruff plaintiffs, a "Twenty–First Amended Original Petition" was filed which specified only the Woodruffs as plaintiffs and specifically set out only their claims against the defendants. There is no "et al." designation for the other plaintiffs, and they are not referred to directly or indirectly in this amended petition. The trial on the claims of the Woodruff plaintiffs began February 7, 2000, and ended in a mistrial, with sanctions assessed against plaintiffs' counsel.[1] After the mistrial, the plaintiffs then, on March 10, 2000, filed *another* "Twenty First Amended Original Petition," which named only the Davis plaintiffs and only alleged their particular claims against the defendants. Again, there is no "et al." designation and there is no reference, direct or indirect, to any of the other plaintiffs or their related claims. On March 23, 2000, the plaintiffs filed a "Twenty–Second Amended Original Petition," in which all the plaintiffs and all their claims against the respective defendants were once again named.

All defendants filed motions for summary judgment based on (1) the nonsuit of

---

1. A matter that is also on appeal before this Court.

the claims against them by the removal of their names and their respective claims from the amended pleadings, and (2) the tolling of limitations against any attempt to bring the claims by the date of the filing of the twenty-second amended petition.

Hodson also sought summary judgment on the claims asserted against him by the Davis plaintiffs because he contended there was no evidence to support the Davis' plaintiffs' assertions that he had violated a duty to provide information, and because there was no evidence on which a finding could have been made that he was vicariously liable for the conduct of Stockinger, the surgeon in that case.

The trial court granted the motions for summary judgment and rendered a take-nothing judgment against all plaintiffs.

The plaintiffs' *two* twenty-first amended petitions created most of the mischief in this case. The first twenty-first amended petition dropped all but two (the Woodruffs) of the former plaintiffs from the case, and the second twenty-first amended petition dropped those two, but renamed another group (the Davis plaintiffs), who had been dropped in the first twenty-first amended petition.

■ The law setting out the effect of amended petitions is clear. An amended petition supplants the earlier ones. As the Texas Supreme Court set out in *Webb v. Jorns*, 488 S.W.2d 407, 409 (Tex.1972), the omission of claims against a party in a petition operates as a voluntary dismissal of the party from the lawsuit. *See* Tex.R. Civ. P. 65; *Whole Foods Mkt. Southwest, L.P. v. Tijerina*, 979 S.W.2d 768, 778 (Tex. App.—Houston [14th Dist.] 1998, pet. denied); *CIGNA Ins. Co. v. TPG Store, Inc.*, 894 S.W.2d 431, 434 (Tex.App.—Austin 1995, no writ).

■ For obvious reasons, most of the cases involving this concept refer to defendants whom the plaintiffs omitted from amended petitions. The language of the opinions, however, universally refer not to omitted plaintiffs or defendants, but instead to omitted *parties*. We have found one published case in which a plaintiff was omitted from an amended petition and in which the court held that when a plaintiff intentionally omits its name from an amended pleading, the party is effectively dismissed from the suit. *Mercure Co. v. Rowland*, 715 S.W.2d 677, 679 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.). And even though the appellants had earlier obtained formal orders from the trial court for the nonsuit of other parties to the suit, it is clear that such orders are not necessary. Parties to a suit are dismissed as effectively by omitting their names from an amended pleading as by entry of a formal order of dismissal. *Ludwig v. Enserch Corp.*, 845 S.W.2d 338, 339 (Tex. App.—Houston [1st Dist.] 1992, no writ) (omission of previously included defendant); *Mercure Co.*, 715 S.W.2d at 679.

Appellants contend that the Texas Supreme Court has distinguished this situation in *American Petrofina, Inc. v. Allen*, 887 S.W.2d 829 (Tex.1994). In that case, a plaintiff was omitted from a lawsuit, but the Texas Supreme Court held that the omission and renaming of a plaintiff in a later pleading did not prevent that plaintiff's claims from relating back to the time of the original pleading for the purpose of limitations. In that case, however, 985 plaintiffs were listed (an asbestosis lawsuit), and one was omitted from one petition but added back in a later petition. Further, since all of their claims were identical, the factual claims made in the petition were not affected by the omission of the particular plaintiff.

The circumstances are somewhat different in this case, where seven of the nine plaintiffs were dropped, and all of their

particular factual assertions of injury were likewise removed from the petitions filed. As of January 24, 2000, only two plaintiffs were named, and no attempt was made to alter matters until March 10, 2000, when the second version of the petition was filed which omitted those two plaintiffs and named a group of former plaintiffs who had been omitted in the January 24 pleading.

■ A dismissal is not an adjudication of the rights of the parties and merely places the parties in the position they were in before the court's jurisdiction was invoked, just as if the suit had not been brought. *Crofts v. Court of Civil Appeals,* 362 S.W.2d 101, 104 (Tex.1962); *Valdez v. Gill,* 537 S.W.2d 477, 480 (Tex.Civ.App.—San Antonio 1976, writ ref'd n.r.e.).

In this case, because of the deletion of the plaintiffs from the petitions, they were no longer part of the lawsuit. After all plaintiffs had been dropped in either the first or the second twenty-first amended petition, the defendants filed motions for summary judgment, pointing out that no plaintiffs remained viable in the case. The plaintiffs filed a response to the motion, supported by an affidavit and other documents, and also filed a twenty-second amended petition that renamed all the original plaintiffs.

The defendants argued that (1) there were no plaintiffs left in the present suit because of the intentional acts of the plaintiffs, and (2) the attempted refiling of the suit was past the two-year limitations period, as shown by the pleadings themselves.[2] The trial court granted the motions. This result is correct unless we conclude that the *American Petrofina* reasoning should be extended to cover this situation.

Rockne Onstad, counsel for plaintiffs, stated by affidavit in his response to the motion for summary judgment that he did not intend to remove the other plaintiffs from the entirety of the lawsuit and that he actually intended to file a sort of "supplemental" petition directed solely at the case preparing to go to trial. This petition, however, does not appear to be a "supplemental" petition. It does not supplement or provide additional detail or additional claims to an existing petition. Instead, it provides the complete claims raised by those plaintiffs, along with the deletion of all claims referring to the other plaintiffs. By definition, it is therefore an amended petition which has the effect of replacing the preceding pleading.

Appellants also argue that even if the parties were indeed nonsuited, limitations should not apply because the defendants did not show they were "prejudiced, misled or placed at a disadvantage by any omission...." They have cited several cases, including one from this Court, in support of this position.[3] Those cases, however, involved pleading changes of the *claims* asserted by the plaintiffs and stated, in accordance with TEX. CIV. PRAC. & REM.CODE ANN. § 16.068 (Vernon 1997), that an amendment to a pleading that: "changes the facts or grounds of liability or defense is not subject to a plea of limitation unless the amendment or supplement is wholly based on a new, distinct, or different transaction or occurrence." This contention ignores the language of the statute. It refers *only* to claims or grounds of liability or defense. It does not refer to the existence of parties within the suit. The in-

2. The injuries occurred in 1992.

3. *Enserch Corp. v. Parker,* 794 S.W.2d 2, 5–6 (Tex.1990); *Dougherty v. Gifford,* 826 S.W.2d 668, 676 (Tex.App.—Texarkana 1992, no writ); *Palmer v. Enserch Corp.,* 728 S.W.2d 431, 433–34 (Tex.App.—Austin 1987, writ ref'd n.r.e.).

stant case is not a situation where existing parties allege a new cause of action—it is a situation where, based on the two twenty-first amended petitions, new parties were brought into the suit by the filing of the twenty-second amended petition.

Nonetheless, the *American Petrofina* decision represents somewhat of a departure from the traditional view. In *American Petrofina*, the court recognized that the omission of a party indicates an intent to nonsuit, but that "the omission of Fazio [one of the 985 plaintiffs] seems to have been inadvertent." *Am. Petrofina, Inc.*, 887 S.W.2d at 831. The court then went on to reference the above-cited statute (Section 16.068) and concluded that since the omission of Fazio was inadvertent, his pleadings related back to the original pleading by the other plaintiffs for limitations purposes and therefore was not time-barred. Footnote five in that decision also suggests that the court might be somewhat more lenient than has heretofore been the rule. In that footnote, the court quoted a Federal Practice Guide, applying the (similar) federal rule, stating that limitations should not be applied when a new plaintiff is added, so long as the addition does not prejudicially affect the defendant—that the added plaintiff's claims "stay within the scope of the conduct, transaction, or occurrence set forth in the original pleading." *Id.* at 831 n. 5.

■ There is some support for counsel's position that the eventual omission of all plaintiffs in this case was an accident, as in *American Petrofina*. However, deleting seven of nine plaintiffs, and then deleting the two remaining plaintiffs, is materially different from omitting one out of almost a thousand plaintiffs. On the other hand, the Woodruffs were about to go to trial, and the pleading filed referred solely to them. It is at least understandable how, in an effort to focus for the upcoming trial,

counsel might prepare a petition that provides that focus, without realizing the ramifications of his act. That theory is further supported by the second "twenty-first" petition, which named only the Davis plaintiffs—the plaintiffs preparing for the next trial.

In *American Petrofina*, the claims were all identical; thus, even if the omission of a plaintiff was an accident, the defendants were not harmed by readding that plaintiff to the case. In this case, the claims are directed at injuries brought about by a particular type of post-surgical infection allegedly caused through a number of possible vectors, at different times, with different surgeons involved. They are quite similar, although not identical. It is also clear that discovery had been ongoing for a period of years in these cases and that all the separate trials were to begin shortly.

Under these circumstances, we are not convinced that the defendants were harmed by the renaming of all the plaintiffs in their twenty-second amended petition. We further conclude that under the combination of procedural and factual circumstances of this case, the appellants have adequately shown that the omission of the plaintiffs from the pleadings was inadvertent, and that showing was not controverted. Therefore, the renaming of all the plaintiffs and the reassertion of their claims in their twenty-second amended petition was not time-barred. The summary judgment granted on that basis is reversed.

The Davis appellants further contend that the court erred by granting the motions for summary judgment filed on other grounds by Wright and Hodson. Wright and Hodson sought summary judgment because they alleged there was no evidence to show that either of those defen-

dants was connected with the injuries to Jennie Mae Davis.

A no-evidence summary judgment is essentially a pretrial directed verdict. We therefore apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict. *McCombs v. Children's Med. Ctr. of Dallas*, 1 S.W.3d 256, 258–59 (Tex.App.—Texarkana 1999, pet. denied); *Jackson v. Fiesta Mart, Inc.*, 979 S.W.2d 68, 70 (Tex.App.—Austin 1998, no pet.). We must determine whether the nonmovant produced any evidence of probative force to raise a fact issue on the material questions presented. *McCombs*, 1 S.W.3d at 259; *Jackson*, 979 S.W.2d at 70. We consider all the evidence in the light most favorable to the party against whom the no-evidence summary judgment was rendered, disregarding all contrary evidence and inferences. *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997). A no-evidence summary judgment is improperly granted if the nonmovant presents more than a scintilla of probative evidence to raise a genuine issue of material fact. *Fiesta Mart, Inc.*, 979 S.W.2d at 70–71. More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Havner*, 953 S.W.2d at 711.

To prevail in a medical negligence cause of action, the plaintiff must prove (1) a duty by the physician/nurse/hospital to act according to applicable standards of care; (2) a breach of the applicable standard of care; (3) an injury; and (4) a causal connection between the breach of care and the injury. *McCombs*, 1 S.W.3d at 259; *Denton Reg'l Med. Ctr. v. LaCroix*, 947 S.W.2d 941, 950 (Tex.App.—Fort Worth 1997, writ denied); *see Hall v. Huff*, 957 S.W.2d 90, 101 (Tex.App.—Texarkana 1997, pet. denied).

The Davis plaintiffs alleged that Stockinger, Wright, and Hodson all formed a physician-patient relationship with Jennie Mae Davis, that Hodson and Stockinger negligently performed heart surgery on her, and that Wright and Hodson were negligent because they failed to inform her about the elevated mortality rate for the patients undergoing heart surgery by the trio. The negligence claims are of failures to adequately inform or warn and failure to properly proceed with the surgery in a safe and professional manner.

We first address the question of duty between Wright and Jennie Mae Davis. Wright contends there was no proof of a physician-patient relationship between himself and Jennie Mae Davis and, thus, there was no proof of the existence of any duty on his part to the patient. The Davis plaintiffs rely on the affidavit of Dr. C. Roger Youmans, Jr. as proof of the existence of such a relationship. In that affidavit, Youmans stated that his review of the defendants' depositions and the decedent's medical records showed that Wright, who was one of the group of heart surgeons (and who was individually aware of the data base showing that the group had a high incidence of infection in its patients) was negligent as to this plaintiff by failing to stop the "group" from performing heart surgeries until determining the cause of the infections and by failing to inform Stockinger and Hodson of the data showing that high incidence of infections.

The Davis plaintiffs direct this Court to no summary judgment evidence that a personal physician-patient relationship had been created between Jennie Mae Davis and Wright. It is undisputed that Wright was not an attending physician or that he was involved in the surgery. The Davis plaintiffs argue instead, citing *Medina v. Herrera*, that Wright was vicariously liable for Stockinger's negligence. *See*

*Medina v. Herrera*, 927 S.W.2d 597, 601 (Tex.1996) (holding that an employer is generally vicariously liable for the torts of its servants committed in the course and scope of their employment).

There is summary judgment evidence that Stockinger was an employee—but not of Wright individually, but of the professional association named James O. Wright, III, M.D., P.A. That association is not a defendant in this lawsuit and does not appear as a defendant in any pleading before this Court. Wright states in his brief (without rebuttal by appellants) that the association has not been a defendant since it was nonsuited by the plaintiffs with the filing of their *fifteenth* amended petition on or about October 6, 1998.

In a more complicated argument, the Davis plaintiffs take the position that they have shown Wright is Hodson's partner and Hodson is vicariously liable for Stockinger's negligence (because Stockinger was Hodson's employee) and, therefore, Wright is liable for Stockinger's negligence. This position is not supported by the record. In support of their position, the Davis plaintiffs direct this Court to summary judgment evidence found at "SCR 1: 165 and 165–166." There is nothing at those locations relating to these statements, and we have been unable to locate the suggested documents through the indices of the twelve volumes of clerk's and supplemental clerk's records.

Thus, the Davis plaintiffs have not shown error. We conclude that the summary judgment granted in favor of Wright and against the Davis plaintiffs was proper.

■ We now turn to the Davis plaintiffs' contention as it applies to Hodson.

Hodson stands in a different posture. He was an assistant surgeon in the procedure, there is summary judgment evidence that he was in a physician-patient relationship with Jennie Mae Davis, and there are allegations of negligence in the procedures leading up to the surgery—supported by expert opinion testimony—that would prevent the rendition of a no-evidence summary judgment against him. Error has been shown. We conclude that the no-evidence summary judgment rendered in favor of Hodson against the Davis plaintiffs was erroneous.

The appellants finally contend that the judgments should be reversed because the trial judge, the Honorable Jack Carter, should have recused himself from the case.

When a motion to recuse has been filed, a judge must either recuse himself or request the presiding administrative judge to assign another judge to hear the motion. TEX.R. CIV. P. 18a(a),(c),(d).[4] In this case, although the appellants admit that their "first" recusal motion was not verified as is required by the rules, the trial court nevertheless referred the case to the presiding administrative judge, and on May 5, 1998, a hearing was conducted on the issue by the Honorable James Zimmerman. He found no reason for recusal.

On March 7, 2000, the appellants filed a "second" motion to recuse based on the same information reviewed in the first hearing, but added the order of mistrial in the separate trial of the Woodruffs' claims. Another recusal hearing was conducted, by the Honorable Lanny Ramsey. He found no justification for recusal and denied the motion.

■ The Texas Rules of Civil Procedure provide that a judge shall recuse

4. *Wright v. Wright*, 867 S.W.2d 807, 811 (Tex. App.—El Paso 1993, writ denied); *Carson v. Gomez*, 841 S.W.2d 491, 493 (Tex.App.— Houston [1st Dist.] 1992, no writ); *Lamberti v. Tschoepe*, 776 S.W.2d 651, 652 (Tex.App.— Dallas 1989, writ denied); *Petitt v. Laware*, 715 S.W.2d 688, 692 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.).

himself in any proceeding in which "his impartiality might reasonably be questioned." TEX.R. CIV. P. 18b(2)(a). We review the denial of a motion to recuse for abuse of discretion. TEX.R. CIV. P. 18a(f); *Vickery v. Vickery*, 999 S.W.2d 342, 349 (Tex.1999) (op. on reh'g); *McElwee v. McElwee*, 911 S.W.2d 182, 185 (Tex.App.—Houston [1st Dist.] 1995, writ denied).[5] The test for abuse of discretion is not whether in the opinion of the reviewing court the facts present an appropriate case for the trial court's action; rather, it is a question of whether the court acted without reference to any guiding rules or principles. The mere fact that a trial court may decide a matter within its discretionary authority in a different manner than an appellate judge does not demonstrate such an abuse. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex. 1985).

 In applying this standard, courts often apply a reasonable person standard in determining whether a recusal motion should have been granted.

*Williams v. Viswanathan*, No. 07–00–0414–CV, 2001 WL 23151 (Tex.App.—Amarillo Jan.8, 2001, no pet. h.); *Ludlow v. DeBerry*, 959 S.W.2d 265, 281 (Tex. App.—Houston [14th Dist.] 1997, no writ) (op. on reh'g); *Aguilar v. Anderson*, 855 S.W.2d 799, 804–05 (Tex.App.—El Paso 1993, writ denied) (Osborn, C.J., concurring). We agree that a reasonable person standard is appropriate because the rule provides for recusal where a judge's impartiality might reasonably be questioned. TEX.R. CIV. P. 18b(2)(a).[6]

The evidence presented at the first recusal hearing[7] consisted of a letter written by Judge Carter to the parties on December 23, 1997, informing them that one of the doctors (Wright) had performed heart surgery on the judge's mother several years earlier (at the hearing, this was narrowed to 1989 or 1990). He also stated that Wright had operated on a colleague, Judge Guy Jones, that Judge Jones had become friends with Wright and that Wright had asked Judge Jones to perform his wedding ceremony several years earli-

5. In relevant part, the rule reads as follows:
 (2) **Recusal**. A judge shall recuse himself in any proceeding in which:
 (a) his impartiality might reasonably be questioned;
 (b) he has a personal bias or prejudice concerning the subject matter or a party, or personal knowledge of disputed evidentiary facts concerning the proceeding.
 TEX.R. CIV. P. 18b(2)(a),(b).

6. We also recognize that if it is necessary to apply the reasonable person standard, we should then determine whether the alleged act indicating bias or impartiality emanated from an extrajudicial source. *Ludlow v. De-Berry*, 959 S.W.2d 265, 281 (Tex.App.—Houston [14th Dist.] 1997, no writ) (op. on reh'g).
 If so, the United States Supreme Court discussed the "extrajudicial source" doctrine in *Liteky v. United States*, 510 U.S. 540, 554–56, 114 S.Ct. 1147, 1156–58, 127 L.Ed.2d 474, 489–91 (1994); *see Ludlow*, 959 S.W.2d at 271. Although the Court was construing the federal disqualification rule, it contains essen-

tially the same language as Rule 18b. The Court stated that opinions formed by the judge on the basis of facts introduced or events occurring during proceedings do not constitute a basis for a recusal motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. *Id.* Thus, the Supreme Court reasoned that judicial remarks during the course of a trial that are critical or disapproving or even hostile to counsel, parties, or their cases, ordinarily do not support recusal, but they may do so if they reveal an opinion deriving from an extrajudicial source and will do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible. *Id.*
 This would apply to any review of the later ruling of mistrial by Judge Carter, but would not apply to our review of the letter which is, on appeal, the centerpiece of appellants' arguments.

7. Neither motion to recuse is included in the appellate record.

er. Judge Jones had agreed, but realized later that he had a conflict and asked Judge Carter to conduct the ceremony, which he did. Judge Carter went on to state in his letter that he had not seen or talked with Wright in several years and that he did not believe this would in any way affect his judgment of any issue in the case.

After hearing argument and reviewing the letter, Judge Zimmerman denied the motion to recuse.

At the second recusal hearing (three years later), counsel again brought up the letter and introduced it into evidence. The trial judge, Lanny Ramsey, refused to permit counsel to question Judge Carter about the contents of the letter because he concluded that those matters were addressed in the first motion to recuse. At the second hearing, counsel called Judge Jones to testify and questioned him about his understanding and application of the rules of recusal.

■ Appellants first contend that they were improperly restricted in their effort to recuse Judge Carter because Judge Ramsey did not permit them to again raise and argue the matters brought before Judge Zimmerman and to question Judge Carter about the letter. Judge Ramsey concluded that the matter had been decided and refused to permit appellants to make a second foray into the same territory.

Tex.R. Civ. P. 18a does not prohibit a party from filing more than one recusal motion against a trial judge. However, it is not clear that a party may seek a recusal and obtain a hearing and then later again attempt to obtain the same relief through another hearing covering the same matters. Although res judicata would not apply in this situation, since no final judgment is involved, this nevertheless smacks of a classic "second bite at the apple," and we are not prepared to say

that the trial court erred by refusing to allow appellants to replow the same field. To determine otherwise in this context would allow the creation of situations where a party could file and refile the same motion until some judge provided a ruling satisfactory to that party. This cannot be correct, and we will not approve such procedure.

■ The remaining question is whether appellants have shown that either Judge Zimmerman or Judge Ramsey abused their discretion by denying their motions to recuse.

The evidence before Judge Zimmerman consisted of a letter written by Judge Carter to the parties informing them that he knew one of the defendants, that the defendant had performed heart surgery on his mother seven years earlier, and that at the request of a fellow judge, he had performed a wedding ceremony for that defendant. It was clear that there was no personal relationship or friendship between them. In the absence of something more than a business relationship or acquaintanceship between the trial judge and the defendant, we will not conclude that Judge Zimmerman abused his discretion by deciding that a reasonable person would determine that Judge Carter would be impartial in this case.

Concerning the decision made by Judge Ramsey, appellants do not argue on appeal (as at the hearing) that Judge Carter showed bias or partiality by ordering the mistrial during the separate trial of the Woodruffs' claims. Instead, their sole focus on appeal is the letter cited above and the error made by Judge Ramsey in determining that the letter did not conclusively show that Judge Carter's partiality might reasonably be questioned.

The argument as finally articulated by appellants is whether allowing Judge Carter to remain as the judge of this case promotes the appearance of judicial integ-

rity or "serves only to undermine the integrity of this judicial system and breed skepticism and cynicism amongst the Bar and the citizens of this state."

We find that recusal is not required merely because the trial judge knows the defendant, or even because the defendant (who was for some time the only heart surgeon in this region) performed surgery on a family member of the judge. The appearance of impropriety must be determined by a "reasonable person" who is in possession of all of the facts. Based on all of these facts, the administrative judges did not abuse their discretion by determining that recusal was not mandated.

The summary judgments are reversed in part and affirmed in part, and remanded to the trial court for further proceedings in accordance with this opinion.