In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00107-CV


______________________________




JESSICA SEIDLER, Appellant



V.



JAMES M. MORGAN D/B/A FISH CREEK RANCH,


AND MORGAN LAND AND CATTLE PARTNERS, LTD., 

D/B/A FISH CREEK RANCH, Appellees



 


On Appeal from the 102nd Judicial District Court


Bowie County, Texas


Trial Court No. 06C1353-102




 




Before Morriss, C.J., Moseley and Cornelius,* JJ.


Opinion by Justice Moseley




________________________

*William J. Cornelius, Chief Justice, Retired, Sitting by Assignment



O P I N I O N



 This is an appeal from the grant of a summary judgment.

 Jessica Seidler accompanied her fiancé on vacation to Fish Creek Ranch, located in
mountainous southwest Colorado near Dolores, Colorado. Although she was not an experienced
equestrian, she was invited to take a horseback ride on October 6, 2004. The docile horse which was
initially selected for her was saddled, but the saddle began to slip; the wife of the ranch employee
who was helping her selected a different and more spirited mount for Seidler's use. During Seidler's
ride, the horse upon which she was mounted bolted in fear from sudden thunder, causing Seidler to
fall heavily to the ground. As a result of the fall, Seidler suffered a dislocated hip, a debilitating and
painful injury. Seidler filed suit October 6, 2006 (two years to the day after the injury) against James
M. Morgan and Morgan Land and Cattle Partners, Ltd., each doing business as Fish Creek Ranch,
to recover for the damages she had sustained.

 The named defendants filed a combined no-evidence and traditional motion for summary
judgment, based upon the defendants' contention that they were the wrong parties against whom suit
was brought; the defendants maintained in their motion that Fish Creek Ranch belonged to neither
of the defendants at the time of the injury. (1) There is a wealth of similar names here; James M.
Morgan is an individual who is an officer and shareholder of Jack B. Kelley Enterprises, Inc., a
shareholder and officer of Morgan Land and Cattle, Inc. (the general partner of Morgan Land and
Cattle Partners, Ltd.). For the purposes of this opinion, "Morgan" shall mean James M. Morgan,
"Morgan Land" shall mean Morgan Land and Cattle Partners, Ltd., and "Morgan, Inc." shall mean
Morgan Land and Cattle Company, Inc. 

 The trial court granted the motion for summary judgment and Seidler has filed her appeal of
that summary judgment. 

 On appeal, Seidler argues that her inaccurate naming of the party might nonetheless be
construed to adequately name the correct party. The focus of appellant's argument is the application
of Rule 28 of the Texas Rules of Civil Procedure, with several additional arguments that attempt to
avoid application of the corporate fiction.

 A somewhat detailed procedural history of this case is needed in order to understand the
arguments raised here. Seidler sued Morgan d/b/a Fish Creek Ranch and Morgan Land d/b/a Fish
Creek Ranch on October 6, 2006, the day before limitations ran. After some discovery had occurred,
the defendants filed a motion for summary judgment, claiming that at the time of the accident, the
ranch was not owned by either of the parties named as defendants but, rather, was owned by Jack B.
Kelley Enterprises, Inc., which had never done business under the assumed or trade name "Fish
Creek Ranch." Thus, defendants argue, neither Morgan nor Morgan Land are proper defendants. 

 Defendants also argued that although Seidler had been put on notice of the defect, she did
not amend her petition to name the correct party.

 The summary judgment evidence shows that the owner of the property at the time of the
accident was Kelley Enterprises. Kelley Enterprises had sold the property to Morgan Land almost
a year before suit was filed. Accordingly, the defendants maintain that the ranch was never owned
by Morgan and although Morgan Land was the owner of Fish Creek Ranch at the time the suit was
filed, it had not been the owner when Seidler was injured. 

 Seidler brought her suit against both Morgan and Morgan Land as entities "d/b/a Fish Creek
Ranch." The undisputed evidence shows that neither entity was individually liable as named, as it
shows that neither Morgan nor Morgan Land owned the property at the time of the accident. We also
note that the summary judgment evidence shows that neither entity ever did business as Fish Creek
Ranch during the relevant time frame. "Fish Creek Ranch" appears to be the name of a place and
not the name of a business.

 At this point in the proceeding, Seidler does not contend that Morgan or Morgan Land ever
did business as Fish Creek Ranch. Her argument is that because she named Fish Creek Ranch as the
assumed name of a business entity, she had adequately set that entity up as a defendant under the
authority of Rule 28 of the Texas Rules of Civil Procedure. See Tex. R. Civ. P. 28.

The Motion for Summary Judgment

 Morgan and Morgan Land filed a motion for summary judgment raising both traditional and
no-evidence claims. They stated in the motion that neither of them were proper parties to the suit. 
Morgan argued that since he had never owned the property in his individual capacity, he was not a
proper individual party; Morgan Land argued that it did not own the property at issue at the time
Seidler's injury occurred, so suit against it was improper. 

 In her response to the motion for summary judgment, Seidler raised a form of piercing the
corporate veil argument, suggesting that because she had evidence showing that Morgan was an
officer of both entities (Morgan Land and Kelley Enterprises) at the time of her injury, because there
was an overlap in the business activities of both entities, because the same family members were
involved in both entities, and because the family members benefitted from the ownership of Fish
Creek Ranch by the successive ownership of the two business entities, the two business entities were
either alter egos of one another or were engaged in joint enterprises. She thus concluded that a suit
brought against either Morgan or Morgan Land was tantamount to having brought suit against (and
provided notice of the suit to) both corporations. In the further alternative, Seidler argued for the
first time in her summary judgment response that the sale from one entity to the other was a sham
transaction. Seidler also argued that because she had pled that the current owner, Morgan Land and
Morgan were "doing business as" Fish Creek Ranch, she could follow that skein from that naming
to bring the previous owner into the lawsuit as a named party. On appeal, Seidler also claims that
Morgan was in control of both Kelley Enterprises and Morgan Land and that the corporate veil of
each should be pierced to subject Morgan to individual liability. 

 The trial court granted Morgan and Morgan Land's joint motion for summary judgment. 

Standards of Review

 When reviewing a traditional summary judgment, we take as true all evidence favorable to
the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's
favor. Limestone Prods. Distribution, Inc. v. McNamara, 71 S.W.3d 308, 311 (Tex. 2002);
Rhone-Poulenc, Inc. v. Steel, 997 S.W.2d 217, 223 (Tex. 1999). On appeal, the movant must show
there is no material fact issue and that the movant is entitled to judgment as a matter of law. 
McNamara, 71 S.W.3d at 311; Steel, 997 S.W.2d at 223; City of Houston v. Clear Creek Basin
Auth., 589 S.W.2d 671 (Tex. 1979).

 In a Rule 166a(i) no-evidence summary judgment, the movant represents that no evidence
exists as to one or more essential elements of the nonmovant's claims, upon which the nonmovant
would have the burden of proof at trial. Tex. R. Civ. P. 166a(i). The nonmovant then must present
evidence raising a genuine issue of material fact on the challenged elements. Id. To defeat a
no-evidence motion for summary judgment, the respondent is not required to marshal its proof; its
response need only point out evidence that raises a fact issue on the challenged elements. Tex. R.
Civ. P. 166a(i) cmt.

 A no-evidence summary judgment is essentially a pretrial directed verdict. Therefore, we
apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply
in reviewing a directed verdict. Wal-Mart Stores, Inc. v. Rodriguez, 92 S.W.3d 502, 506 (Tex.
2002). 

 We must determine whether the nonmovant produced any evidence of probative force to raise
a fact issue on the material questions presented. Id.; Woodruff v. Wright, 51 S.W.3d 727 (Tex.
App.--Texarkana 2001, pet. denied). A nonmovant will defeat a no-evidence summary judgment
motion if the nonmovant presents more than a scintilla of probative evidence on each element of his
or her claim. King Ranch, Inc. v. Chapman, 118 S.W.3d 742, 751 (Tex. 2003); Jackson v. Fiesta
Mart, Inc., 979 S.W.2d 68, 70-71 (Tex. App.--Austin 1998, no pet.). 

 In our review, we consider all the summary judgment evidence in the light most favorable
to the party against whom the no-evidence summary judgment was rendered, disregarding all
contrary evidence and inferences. Merrell Dow Pharms., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex.
1997).

Analysis

 On appeal, Seidler contends that the court erred by granting summary judgment. She argues
that the parties she named were the correct entities, not because Morgan Land or Morgan actually
owned the property at the time of Seidler's injury, but because they are so interlinked and intertwined
with Kelley Enterprises as to make a suit against one of them a suit against all. She also argues that
because she stated that the entities were "doing business as" Fish Creek Ranch, any prior entity that
had owned Fish Creek Ranch was necessarily properly named thereby as a party. She then proceeds
in her argument to say that notice to Kelley Enterprises of the suit was adequate because one of the
entities served (Morgan) is a limited partner in Morgan Land and an officer and stockholder in both
Morgan, Inc. (the general partner of Morgan Land) and in Kelley Enterprises, the last two of these
entities being both the entity which now owns Fish Creek Ranch and the entity which owned it at
the time of the accident. She goes further to point out that Kelley Enterprises had the same agent for
service of process in Colorado as Morgan Land.

 Seidler bases her first series of arguments upon the application of Rule 28 of the Texas Rules
of Civil Procedure. The rule reads: 

 Suits in Assumed Name

 Any partnership, unincorporated association, private corporation, or
individual doing business under an assumed name may sue or be sued in its
partnership, assumed or common name for the purpose of enforcing for or against it
a substantive right, but on a motion by any party or on the court's own motion the true
name may be substituted. 


Seidler argues that the court erred because filing suit against "Fish Creek Ranch" properly sued
whatever entity it was as a "common name" under Tex. R. Civ. P. 28.

 There are several problems with this position. 

 On a very basic level, the summary judgment evidence shows that no entity (neither the
parties named in the lawsuit nor the unnamed Kelley Enterprises) ever did business under the name
of Fish Creek Ranch. The evidence clearly shows that although the property upon which business
was conducted was identified as Fish Creek Ranch and can easily be considered as the "common
name" of the property, there is no evidence to support the predicate requirement. Before the use of
a common name is adequate under Rule 28, there must be a showing that the named entity is in fact
doing business under that common name.

 Simply because a place name may be commonly informally used (as has apparently been
done here) does not mean that the name of the site and the type of business conducted there is "doing
business as." There was evidence that neither Morgan Land nor Morgan had ever done business
under that name and there was no evidence that they ever did. Payments to the employees and to
suppliers were not made under the name of Fish Creek Ranch; rather, they were made by Morgan
Land. Neither Morgan nor Morgan Land ever adopted the formal assumed name of "Fish Creek
Ranch" as allowed by statute; there is nothing in this record to reflect that the use of the name
informally was done in any way other than a way to identify a physical asset of the corporation and
the kind of business which was operated at that site. The only part of the summary judgment proof
that might be said to even indicate that anyone ever did business under "Fish Creek Ranch" is the
way that the property was listed on a property insurance policy--along with the then-owner, Kelley
Enterprises. (2) The insurance policy generated by the Colorado Farm Bureau insurance company dated
May 31, 2007, contains a summary of coverages on a number of pieces of property. 

 Morgan and Morgan Land argue that this was just the insurance company which so identified
the property. We do recognize that an insurance policy is not a unilateral contract; although the
insurance company issued the policy, Kelley Enterprises appears to have accepted it, presumably
paid for it, and has possibly accepted benefits under it. However, that isolated use in such an unclear
setting is not sufficient to stand as evidence that Kelley Enterprises actually did business in that
name. It is no more than a scintilla, and only a scintilla that might raise an implication, rather than
show a fact. 

 Further, even if the mention of Fish Creek Ranch in the insurance policy were strong
evidence, it would be evidence only of a relationship between Kelley Enterprises and the "Fish Creek
Ranch" name. It is no evidence of such a relationship between Morgan Land or Morgan and Fish
Creek Ranch. The only way in which this could morph into relevant evidence is if we concluded that
there was a fact issue as to whether Morgan Land and Kelley Enterprises were so intertwined as to
be the same entity. 

 In addition, it is more likely that this identification was intended to limit the liability of the
insurance company under the policy to the business which was being conducted at that site and not
Kelley Enterprises's entire business operations.

 Even if we concluded that this is some evidence that both Kelley Enterprises and Morgan
Land each did business as Fish Creek Ranch, that does not indicate that Morgan Land would be
responsible for liabilities which arose during the time that Kelley Enterprises owned the place and
operated under that name, and there is no summary judgment evidence that this kind of liability was
assumed by Morgan Land in its purchase of that asset. 

 Think of an ocean-going tanker which has a name (let us choose "Laura"), which is owned
by corporation A; everyone refers to the business operations of that tanker as things done by the
"Laura." The "Laura" has a huge oil spill and corporation A thereafter sells the tanker to
corporation B, but the name remains the same and everyone still refers to her as the "Laura." Is
corporation B going to be responsible for the oil spill? If the sale is an arms-length transaction, it
would not be so. 

 We must also recognize that Seidler did not bring suit against the assumed name. She
brought suit against Morgan and Morgan Land, with the notation that those entities were doing
business as Fish Creek Ranch. That separates this situation from the one described in Chilkewitz v.
Hyson, 22 S.W.3d 825 (Tex. 1999). In that case, the plaintiff sued Hyson as Morton Hyson, M.D.,
but was informed that the correct defendant would be Morton Hyson, M.D., Professional
Association. Plaintiff promptly amended his pleading. The Texas Supreme Court determined that
there was some evidence that a professional association comprised of only one professional did
business in the name of the individual and had listings and advertisements under the physician's
name, which made no mention of the professional association; therefore, suit against the individual
under those circumstances would serve to sue the actual defendant, his professional association.

 In this case, the suit as filed sought to recover for the alleged negligence of Morgan or
Morgan Land, and then identified them as "doing business as" Fish Creek Ranch. There is no
evidence that either Morgan or Morgan Land were doing business as Fish Creek Ranch at the time
of the injury and there is conclusive proof to the contrary. Although Seidler knew of the incorrect
naming shortly after the defendants answered, she chose not to amend her pleadings to add the
potentially-liable party. The way in which a suit is brought is solely under the control of counsel,
subject to later complaint by the opposing side. 

 The uncontradicted summary judgment evidence shows the following: 


 Neither Morgan nor Morgan Land owned Fish Creek Ranch when the injury occurred.
 Neither Morgan nor Morgan Land used "Fish Creek Ranch" as an assumed name or did
business under that name.
 Neither Morgan nor Morgan Land conducted any business in which they identified
themselves as "Fish Creek Ranch." 
 None of the entities that did business involving the ranch when it was owned by Kelley
Enterprises either sent invoices addressed to Fish Creek Ranch nor were paid by any means
which mentioned Fish Creek Ranch; rather, only Kelley Enterprises was billed or paid. 
Likewise, after the property was conveyed to Morgan Land, it did not use "Fish Creek
Ranch" in its billings or payments. 
 There is neither any evidence that Fish Creek Ranch was recognized as a business by the
public at large nor was there any evidence that any effort was made by either owner to
present it as such. 
 "Fish Creek Ranch" was the name of the ranch. Although that was the common name of the
location, it was not the common name of the business or owner.
 Further, applying the language of the rule, even if "Fish Creek Ranch" is the common name
of the entity, there was no evidence that it was "doing business as" that name, or that it was
an "assumed name" of the business. (3)


There is no doubt that "Fish Creek Ranch" was a name commonly used to identify the property. 
There is no evidence that either entity which owned the place, Morgan Land or Kelley Enterprises,
or Morgan did business as "Fish Creek Ranch." 

 Accordingly, unless some other rule of law intervenes, there is no evidence that the named
party is a proper party to this lawsuit, and summary judgment was therefore properly rendered. 

 We now move to Seidler's alternative arguments in which she attempts to interpose such
alternative theories of law.

Joint Enterprises?

 Seidler argues that there is some evidence that Morgan Land and Kelley Enterprises were
engaged in a joint enterprise to acquire and hold Fish Creek Ranch for the use and benefit of the
Morgan family and, on oral argument, that the two businesses were possibly alter egos of one
another. She argues that we should pierce the corporate veils and conclude that the two entities are
in reality a single entity with a single purpose. Thus, she concludes, by suing one, she also
simultaneously sued the other. 

 Texas has adopted the restatement standard, finding that the elements which are essential to
a joint enterprise are: (1) an agreement, express or implied, among the members of the group; (2) a
common purpose to be carried out by the group; (3) a community of pecuniary interest in that
purpose, among the members; and (4) an equal right to a voice in the direction of the enterprise,
which gives an equal right of control. Tex. Dep't of Transp. v. Able, 35 S.W.3d 608, 613 (Tex.
2000); Shoemaker v. Estate of Whistler, 513 S.W.2d 10, 14 (Tex. 1974). 

 Seidler's argument is that Morgan Land, Kelley Enterprises, and Morgan entered into a joint
enterprise to purchase and operate the ranch as a joint activity. The summary judgment evidence
contains no written agreements among these parties, and there is no direct evidence of such an
agreement. The evidence pointed to by Seidler consists of no more than the commonality of officers
in the entities, with suggestions that we should ascribe some sinister motive thereto. There is
summary judgment evidence that when Kelley Enterprises conveyed Fish Creek Ranch to Morgan
Land, it received a secured multi-million dollar promissory note as a part of its compensation. 

 Further, in order to prove a joint enterprise between the two entities, there must be a common
purpose of the two entities. Although Seidler argues that Morgan had a common purpose with
Kelley Enterprises, that is not the correct object of an inquiry. She also suggests that the two
business entities had a common purpose: to take care of Morgan's asset (the ranch). If that is true,
any two companies with common stockholders have a common purpose: to provide for the financial
benefit of the stockholders. That is not the meaning of the concept. The term "enterprise" indicates
that the entities are engaged in a common activity. Although Kelley Enterprises managed the ranch
until its sale, and Morgan Land managed it after purchasing it, that does not suggest that the two
entities were one. 

 Additionally, at oral argument, Seidler's lawyer stressed that both Kelley Enterprises and
Morgan Land existed for the benefit of the Morgan family and, therefore, (1) should be treated as
a single entity, subjecting both to liability and (2) that this somehow made Morgan individually
liable.

 The fact that the Morgan family would benefit from the actions of both entities is not a
determinative factor. A major purpose of a corporation, a limited liability company, or a limited
partnership is to provide a shield to personal liability. Although this legal shield may be
inconvenient to her theory of recovery, to Seidler it is an inconvenient truth which may not be
ignored.

 Even without parsing the two remaining elements (as there is no evidence of these two
elements), then neither the joint enterprise theory nor the alter ego theory could bring Kelley
Enterprises into the ambit of the named parties.

Piercing the Corporate Veil?

 Seidler also argues that there is some evidence to suggest that it would be appropriate to
pierce the corporate veil, and thereby show that Morgan, an officer and shareholder in Kelley
Enterprises and a limited partner in Morgan Land, was a proper party. Various theories exist for
"piercing the corporate veil" or disregarding the corporate form. These theories must be specifically
pleaded or they are waived, unless they are tried by consent. See Mapco, Inc. v. Carter, 817 S.W.2d
686, 688 (Tex. 1991); Town Hall Estates-Whitney, Inc. v. Winters, 220 S.W.3d 71, 86 (Tex.
App.--Waco 2007, no pet.).

 In Castleberry v. Branscum, 721 S.W.2d 270, 272 (Tex. 1986), the Texas Supreme Court
enumerated theories under which a corporate veil can be pierced: (4) 

 (1) when the fiction is used as a means of perpetrating fraud; 

 (2) where a corporation is organized and operated as a mere tool or business conduit of
another corporation ("alter ego"); 

 (3) where the corporate fiction is resorted to as a means of evading an existing legal
obligation; 

 (4) where the corporate fiction is employed to achieve or perpetrate monopoly; 

 (5) where the corporate fiction is used to circumvent a statute; 

 (6) where the corporate fiction is relied upon as a protection of crime or to justify wrong; 
and

 (7) inadequate capitalization so as to work an injustice; (Id. at 272 n.3) and two or more
businesses were operated as a single business enterprise. 

Paramount Petroleum Corp. v. Taylor Rental Ctr., 712 S.W.2d 534, 536 (Tex. App.--Houston [14th
Dist.] 1986, writ ref'd n.r.e.); Allright Tex., Inc. v. Simons, 501 S.W.2d 145, 149-50 (Tex.
App.--Houston [1st Dist.] 1973, writ ref'd n.r.e.). 

 Under Willis v. Donnelly, 199 S.W.3d 262 (Tex. 2006), which applies recent changes in the
Texas Business Organizations Code, it is also apparent that any shareholder liability for wrongs done
by a corporation exists only in extremely limited and statutorily defined circumstances, such as when
a shareholder caused the corporation to be used for the purpose of perpetrating--and did
perpetrate--an actual fraud on the obligee primarily for the direct personal benefit of the shareholder. 
See Tex. Bus. Orgs. Code Ann. § 21.223(a). There was no evidence provided by Seidler to show
that Morgan committed an act or followed a course of conduct which would make him liable for the
acts of the entities involved. 

 In this case, Seidler argues that the corporate fiction should be disregarded and that Morgan
is, thus, a proper party. The reason we should so conclude, Seidler argues, is because Morgan and
his wife had full ownership of Kelley Enterprises and partial ownership (but complete control) over
Morgan Land (because they owned and controlled its general partner, Morgan, Inc.). Thus, Morgan
and his wife did not treat the ranch as a separate corporate asset, but acquired it and its contents for
their personal use. (5) As to a claim that Kelley Enterprises and Morgan Land are alter egos of one
another, "The burden to prove alter ego rests upon the party who is arguing that the two parties are
actually one entity." See BMC Software Belgium, N.V. v. Marchand, 83 S.W.3d 789, 798 (Tex.
2002). There is simply no proof proffered by Seidler to that effect and there is ample summary
judgment evidence to rebut it. 

 The personal use or benefit claims are not proper reasons to apply the alter ego concept. In
a plea directed more to emotion than reason, Seidler goes on to argue that the veil should be pierced
because otherwise she, an injured person, will not be recompensed and the negligent party will avoid
liability. Even if this is true, subjecting just anyone having any connection with an entity is not a
reason to pierce the corporate veil. One reason for the existence of the legal veil is to insulate parties
from liability. Further, there is no implication from the summary judgment proof that the sale had
any linkage to the injury, or that any other act occurred for the purpose of improperly avoiding
liability or to defraud any party. If Seidler had valid claims against another person or entity for the
injuries which she suffered, she could seek redress against the person or entity which could have
liability; she opted to bring suit against others.

 We affirm the judgment of the trial court.




 Bailey C. Moseley

 Justice


Date Submitted: January 21, 2009

Date Decided: February 12, 2009

1. In their original and amended answer, the defendants made a verified plea that neither was
liable in the capacity in which they were sued, that there was a defect of parties defendant, and
denied the existence of a partnership as alleged. However, Seidler declined to amend her pleadings. 
2. The identifier reads: "Jack B. Kelley Enterprises & Fish Creek Ranch."
3. The Texas Business and Commerce Code contains a requirement in Texas that if an entity
regularly conducts business under an assumed name, it must file a certificate with information about
the business. Tex. Bus. & Com. Code Ann. §§ 36.10, 36.11 (Vernon 2002) (violation is a
misdemeanor (Tex. Bus. & Com. Code Ann. § 36.26 (Vernon 2002))).
4. Although Castleberry has been partially superseded by statute (see Tex. Bus. Orgs. Code
Ann. § 21.223(a) (Vernon Supp. 2008), the checklist within it remains useful for discussion. 
5. As to the attempt at piercing the veil of Morgan Land in order to pursue Morgan, we note
that it is a limited partnership. The theory of piercing the corporate veil is inapplicable to limited
partnerships. Pinebrook Props., Ltd. v. Brookhaven Lake Prop. Owners Ass'n, 77 S.W.3d 487, 499
(Tex. App.--Texarkana 2002, pet. denied). The Legislature altered the general scheme and
statutorily created limited partnerships governed by the Texas Revised Limited Partnership Act. 
Tex. Rev. Civ. Stat. Ann. art. 6132a-1 (Vernon Supp. 2008). Under the act, a "general partner of
a limited partnership has the liabilities of a partner in a general partnership without limited partners
to persons other than the partnership and the other partners." Tex. Rev. Civ. Stat. Ann.
art. 6132a-1, § 4.03(b). Therefore, if there were to be any piercing of a veil in order to subject
Morgan to liability, it would have to be through Kelley Enterprises and not through Morgan Land.