

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  |  |  |
|---|---|---|
| | § | |
| | § | |
| | § | 08-13-00061-CV |
| IN RE: HERITAGE OPERATING, L.P. | § | |
| A/K/A DENMAN PROPANE | | AN ORIGINAL PROCEEDING IN |
| | § | |
| | | MANDAMUS |
| | § | |
| | § | |

## **O P I N I O N**

In this negligence and premises-liability action, the jury found that the Catholic Diocese of

El Paso (San Lorenzo Church) and Heritage Operating, L.P. a/k/a Denman Propane were not liable

to Real Parties in Interest.[1]   After the trial court rendered a take-nothing judgment on the jury's

verdict[2], Real Parties moved for a new trial, which the trial court granted.   Heritage now seeks a

writ of mandamus directing the trial court to vacate its order granting a new trial.[3]   Because we

conclude that the trial court abused its discretion, we conditionally grant mandamus relief.

### **FACTUAL AND PROCEDURAL BACKGROUND**

---

[1] Real Parties are four minors and their parents.   They sought to hold San Lorenzo Church and Heritage responsible for the fire that burned the minors at a church festival.

[2] Real Parties have appealed the trial court's take-nothing judgment.   That proceeding has been docketed as Cause No. 08-13-00002-CV.

[3] Like Heritage, San Lorenzo Church seeks mandamus relief from the trial court's order granting a new trial.   San Lorenzo Church's mandamus proceeding has been docketed as Cause No. 08-13-00064-CV.

The trial court signed the take-nothing judgment on October 5, 2012. Real Parties timely moved for a new trial but their motion was initially denied by written order on November 9, 2012. Real Parties were apparently unaware that their motion had been denied because they set it for a hearing on December 17, 2012 before the newly-elected trial judge. Heritage objected, arguing that a hearing would be moot because the trial court no longer had the plenary power to grant a new trial.

On the appointed day, the trial judge held the hearing but asked the parties, "without going into the motion for new trial, to discuss whether or not I have jurisdiction to hear this motion." Real Parties raised, for the first time, the argument that the trial court retained jurisdiction because the October 5 judgment was not final for appellate purposes. They claimed that unapproved settlement agreements between the injured minors and two former defendants, Frances Paneral and K. Danelle Ivey, rendered the October 5 judgment interlocutory because it failed to dispose of all the claims and parties in the litigation. Heritage countered that the judgment should be considered final for appellate purposes because, among other reasons, it was rendered after a conventional trial on the merits and it contained language unequivocally indicating finality: "This judgment fully and finally disposes of all parties and all claims and is final and appealable." San Lorenzo augmented Heritage's argument by citing *John v. Marshall Health Servs., Inc.*, 58 S.W.3d 738 (Tex. 2001) for the proposition that, even though the October 5 judgment failed to mention the minors' settlements, the presumption of finality accorded a judgment rendered after a conventional trial on the merits applied here, especially since "[e]verybody knew the settlement had taken place" and "[i]t was just a matter of getting the friendly suit to finalize it."

Three days later, the trial court signed two judgments. One judgment, titled "Judgment

2

Nunc Pro Tunc," is identical in substance to the October 5 judgment except that it does not contain the "finality" language. The other judgment, titled "Final Judgment Disposing of All Parties and Issues," decreed that, unlike the October 5 judgment, it was a final judgment because the minors' settlements had been approved.[4] But like the October 5 judgment, it, too, rendered a take-nothing judgment against Real Parties.

Real Parties then filed a second motion for new trial, asserting that the jury's verdict was erroneous and that the trial court reversibly erred in conducting the trial and in admitting and excluding evidence. In response, Heritage re-urged the argument that the trial court did not have the plenary power to consider the motion for new trial. The trial court heard the motion and, after taking it under advisement, signed an order, dated January 22, 2013, granting a new trial.

## PLENARY POWER

Heritage contends that it is entitled to mandamus relief because, among other reasons, the trial court granted a new trial after its plenary power had expired. We agree.

Mandamus relief is appropriate when a trial court grants a new trial after its plenary power has expired.[5] *In re Brookshire Grocery Co.*, 250 S.W.3d 66, 68 (Tex. 2008)(orig. proceeding); *In re Sw. Bell Tel. Co.*, 35 S.W.3d 602, 605 (Tex. 2000)(orig. proceeding)(per curiam); *In re Dickason*, 987 S.W.2d 570, 571 (Tex. 1998)(orig. proceeding)(per curiam); *see also Richie v. Heard*, 611 S.W.2d 419, 420 (Tex. 1981)(mandamus proper when trial court retained jurisdiction

---

[4] The trial judge approved the minors' settlements on the same day he heard the parties' arguments regarding the trial court's plenary power to consider the motion for new trial.

[5] Real Parties' contention that Heritage is not entitled to mandamus relief because it has "an adequate remedy by appeal from the trial court's . . . order[—]the appeal currently pending before this Court on the issue of finality of the October 5 Judgment[—]" is without merit. When the trial court abuses its discretion by granting a new trial transfer order long after its plenary power has expired, a relator is not required to show that it did not have an adequate appellate remedy. *In re Sw. Bell Tel. Co.*, 35 S.W.3d at 605; *In re Dickason*, 987 S.W.2d at 571. This is because any subsequent trial would be a nullity. *In re Dickason*, 987 S.W.2d at 571.

following expiration of plenary power). A trial court retains plenary power over its judgment until that judgment becomes final for appellate purposes. TEX.R.CIV.P. 329b; *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 200 (Tex. 2001). Accordingly, a trial court's jurisdiction depends on whether a "final" judgment has been rendered. A judgment is final for purposes of appeal if it disposes of all claims and parties then before the trial court. *Lehmann*, 39 S.W.3d at 195, 200, 205.

### 1. Finality of October 5 Judgment

The October 5 judgment disposed of all claims and parties then before the trial court. When judgment was rendered, the live pleadings before the trial court were Real Parties' amended petitions of August 16, 2012. These petitions named San Lorenzo Church and Heritage as the only defendants; the other defendants named in the Supplemental Petitions of April 4, 2012 were omitted from the amended petitions. When a plaintiff files an amended petition omitting a defendant named in a previously filed petition, that defendant is no longer a party because the amended petition effects a voluntary dismissal as to the omitted defendant. *See* TEX.R.CIV.P. 65 (an amended petition supersedes all prior petitions and renders them nullities); *Webb v. Jorns*, 488 S.W.2d 407, 409 (Tex. 1973)(amended pleading filed by father, individually and on behalf of his minor children, in a medical malpractice suit naming three physicians but omitting hospital as a defendant asserted no cause of action against the hospital). Because Real Parties' amended petitions of August 16, 2012 named San Lorenzo Church and Heritage as the sole defendants and altogether omitted Frances Paneral and Danelle Ivey, Real Parties effectively dismissed Paneral and Ivey from the lawsuit at that point. Consequently, Paneral and Ivey were no longer parties when the trial court rendered the October 5 judgment. At that point, the only parties to the lawsuit

were Real Parties, San Lorenzo Church and Heritage. Accordingly, the October 5 judgment was a final judgment because it disposed of all parties and all claims then pending before the trial court, *i.e.*, Real Parties' claims against San Lorenzo Church and Heritage.

Real Parties assert that, although they "did remove the names of the individual defendants involved with the settlements from the caption of the case when they amended their petition, they had no intention of dropping those defendants or claims, but instead were working to address the caption in preparation for trial and avoid jury confusion." But Real Parties' assertion that they did not intend to dismiss Paneral and Ivey from the lawsuit is belied by the record.

Shortly before trial commenced, Real Parties sought permission to file an amended petition for a multitude of reasons, one of which was "to remove the names of Francis Paneral and Danelle Ivey who have settled." The amended petitions attached to the respective motions named only San Lorenzo Church and Heritage as defendants. At the hearing to consider the matter, counsel for Real Parties confirmed, several times, that his clients wanted to proceed solely against San Lorenzo Church and Heritage:

> And so what I did is I went back in and I went through and I cleared our pleadings up. I sat [sic] forth in there the parties that remained in this case which was Heritage and the Catholic Diocese and set forth with more information the claims that were being made against each of these two defendants.
>
> .  .  .
>
> Basically, to clean the heading up and drop the claims -- remove the claims that you have granted orders on on [sic] Diller and Paneral, etc.
>
> .  .  .
>
> And actually, we're doing that really to clean up the pleadings. Their argument that it takes out the other parties is exactly why you would file a motion for leave because those parties are no longer parties to this lawsuit so it's no surprise to them. They knew all along at every step of the way who was parties and who was not, so

5

there's no surprise to them nor any prejudice to them that the other parties were dismissed. They didn't object a bit to you granting an order on Bryan Diller or your granting an order on Frances Paneral. So, respectfully the leave should be granted to file the petition.

The trial court granted leave, and Real Parties filed their amended petitions naming San Lorenzo Church and Heritage as the only defendants.

Real Parties also assert that the October 5 judgment was not a final judgment because the minors' settlements with Paneral and Ivey had not been approved by then. In essence, Real Parties assert that a judgment rendered after a conventional trial on the merits can never be final if "settlements with minors, particularly those with guardians ad litem," remain unapproved. But Real Parties fail to cite case law in support of this proposition, and we have found none. More importantly, they cannot escape the legal effect of filing their amended petitions of August 16, 2012 and prosecuting them at trial. The amended petitions superseded all prior petitions and operated to dismiss parties and causes of action to the extent they were omitted from the amended pleadings. This is so even though some of the parties amending the petitions were minors.[6] *See*

---

[6] Whether Real Parties had the authority to dismiss the minors' claims is another matter. *See Howell v. Fifth Court of Appeals*, 689 S.W.2d 396, 398 (Tex.1985)(Gonzalez, J., dissenting)(concluding that next friend had no authority to take a non-suit as to the claims filed by the minors because next friend lost the right to represent the minors' interests once guardian ad litem was appointed for them). But this matter is not before us. And, even if the minors' claims were pending before the trial court, their omission from the October 5 judgment would not render it interlocutory.

A judgment need not expressly address every party and claim for it to be considered a final judgment for appellate purposes. *Vaughn v. Drennon*, 324 S.W.3d 560, 562 (Tex. 2010). "When a judgment, not intrinsically interlocutory in character, is rendered and entered in a case regularly set for a conventional trial on the merits, no order for a separate trial of issues having been entered . . . it will be presumed for appeal purposes that the Court intended to, and did, dispose of all parties legally before it and of all issues made by the pleadings between such parties." *Ne. Indep. Sch. Dist. v. Aldridge*, 400 S.W.2d 893, 897-98 (Tex. 1966). In other words, a judgment following a conventional trial on the merits need not dispose of every party and claim for the *Aldridge* presumption of finality to apply. *Vaughn*, 324 S.W.3d at 561 [Quotation marks omitted]. If there is any doubt as to a judgment's finality, then "[f]inality must be resolved by a determination of the intention of the court as gathered from the language of the decree and the record as a whole, aided on occasion by the conduct of the parties." [Internal quotation marks omitted]. *Lehmann*, 39 S.W.3d at 203.

First, the October 5 judgment was rendered after a conventional trial on the merits. Thus, the *Aldridge* presumption of finality applies. This is so despite the existence of unapproved settlement agreements. *See Moritz v. Preiss*, 121

*Webb*, 488 S.W.2d at 409 (minors' claims against hospital were voluntarily dismissed, without prejudice, by their father when he filed an amended pleading naming three physicians but omitting the hospital).  And, although the minors' claims against the settling defendants were no longer part of the "suit pending" before the trial court when it rendered final judgment, Real Parties were not without recourse.  They could have obtained—and did obtain—approval of the settlements without affecting the finality of the October 5 judgment.

## 2.   Expiration of Plenary Power

The appellate timetable began to run once the trial court signed the October 5 judgment. A trial court retains jurisdiction over a case for 30 days after it signs a final judgment. TEX.R.CIV.P. 329b(d).   The trial court's plenary power can be extended by the timely filing of an appropriate post-judgment motion.   TEX.R.CIV.P. 329b(a), (g).   When a party files a timely

S.W.3d 715, 718-19 (Tex. 2003)(judgment in favor of defendant health care providers was final, even though one provider was not named in the judgment, when plaintiff did not request and court did not enter any orders for a separate trial against the provider, the provider's liability was not submitted to the jury, and the plaintiff did not object to the jury charge); *John*, 58 S.W.3d at 739-40 (*Aldridge* presumption would be applied even though judgment did not mention three settling defendants, when plaintiff did not move for separate trials and did not seek any relief against settling defendants at trial, and there was nothing to indicate that trial court did not intend judgment to finally dispose of entire case).

Second, it is evident that the trial court and the parties treated the October 5 judgment as final.   The judgment states, in relevant part:   "This judgment fully and finally disposes of all parties and all claims and is final and appealable." The terms "final" and "appealable" unmistakably indicate the trial court's intent to dispose of all claims and parties. Indeed, the trial court's declaration is nearly identical to the example of finality offered in *Lehmann*:   "This judgment finally disposes of all parties and all claims and is appealable[.]"   *Lehmann*, 39 S.W.3d at 206.   Real Parties filed a motion for new trial and a notice of appeal.   The motion for new trial challenged the judgment on several grounds, none of which concerned the finality of the judgment.   As noted above, the trial court denied the motion.   "Such a motion would not be necessary, nor would it be [denied], were the judgment not believed to be final by both [Real Parties] and the trial court."   *Vaughn*, 324 S.W.3d at 563.

Third, the record as a whole likewise supports the conclusion that the October 5 judgment is final for appellate purposes.   When trial commenced, the parties to the suit were Real Parties, Heritage and San Lorenzo.   Real Parties had previously dismissed, for various reasons, the other defendants, including Paneral and Ivey.   Real Parties did not pursue any claims against Paneral and Ivey, nor did they request the submission of any jury questions regarding them.

Fourth, as the supreme court made clear in *Lehmann*, the guiding principle in determining whether a judgment is final is ensuring that a party's "right to appeal is not lost by an overly technical application of the law."   *Lehmann*, 39 S.W.3d at 205.   Here, Real Parties did not lose their right to appeal the trial court's take-nothing judgment. Following the rendition of judgment, they timely filed a motion for new trial and a notice of appeal.

motion for new trial, the trial court has plenary power for 75 days following the date the court signed the judgment to act on that motion. TEX.R.CIV.P. 329b(a), (g). Once the trial court overrules a timely-filed motion for new trial, the court retains plenary power for another 30 days. TEX.R.CIV.P. 329b(e). After the expiration of these additional 30 days, the trial court loses its plenary power and lacks jurisdiction to act in the matter. *See generally Check v. Mitchell*, 758 S.W.2d 755, 756 (Tex. 1988).

Here, the trial court signed the order denying the motion for new trial on November 9, 2012. It therefore retained plenary power until December 10, 2012.[7] *See* TEX.R.CIV.P. 329b(e). But the trial court signed the two judgments mentioned above and the order granting a new trial well after this date. Accordingly, the order granting a new trial is void because the trial court no longer had jurisdiction over this case when it signed the order.

Real Parties assert that "the trial court had plenary power to grant a motion for new trial because it corrected the October 5 judgment by a Judgment Nunc Pro Tunc." They argue that the trial court made a clerical error in including the finality language in the October 5 judgment because it was aware that settlements with the minors had not been approved. Real Parties are mistaken in asserting that the trial court could have corrected the judgment after it became final.

After a judgment has become final, the trial court may correct clerical, but not judicial, errors by *nunc pro tunc* judgment. TEX.R.CIV.P. 316; *Escobar v. Escobar*, 711 S.W.2d 230, 231 (Tex. 1986); *Andrews v. Koch*, 702 S.W.2d 584, 585 (Tex. 1986). Whether an error is clerical or judicial in nature is a question of law. *Escobar*, 711 S.W.2d at 232; *Finlay v. Jones*, 435 S.W.2d 136, 138 (Tex. 1969). The salient distinction between "clerical" and "judicial" errors lies in the exercise of judgment; a clerical error is one which does not result from judicial reasoning or

---

[7] December 9, 2012 fell on Sunday.

determination.  *Andrews*, 702 S.W.2d at 585.  On the other hand, a judicial error is an error occurring in the rendering as opposed to the entering of a judgment.  *Escobar*, 711 S.W.2d at 231. The rendition of judgment is the judicial act by which the court settles and declares the decision of the law upon the matter at issue.  *Coleman v. Zapp*, 105 Tex. 491, 494, 151 S.W. 1040, 1041 (1912); *Comet Aluminum Co. v. Dibrell*, 450 S.W.2d 56, 58 (Tex. 1970).  Judicial errors are never correctable by the trial court after its jurisdiction expires.  *Comet Aluminum*, 450 S.W.2d at 58.

The proponent of a clerical error must show by clear and convincing evidence that the trial judge intended the requested result at the time the original judgment was entered.  *Riner v. Briargrove Park Prop. Owners, Inc.*, 976 S.W.2d 680, 683 (Tex.App.--Houston [1st Dist.] 1997, no writ).  This high burden insures that trial judges can correct their clerical mistakes, while preventing the use of Rule 316 as a vehicle to circumvent the general rules regarding the trial court's plenary power if the court changes its mind about its judgment.  *Jenkins v. Jenkins*, 16 S.W.3d 473, 482 (Tex.App.--El Paso 2000, no pet.).

Real Parties have not met this high burden.   If, as urged by them, the judgment as rendered was erroneous because it should not have included the finality language, then the error was judicial, not clerical, in nature and incapable of cure by a *nunc pro tunc* judgment.  *See Shepherd v. Long's Estate*, 480 S.W.2d 51, 54 (Tex.Civ.App.--Fort Worth 1972, writ ref'd n. r. e.)("If a court actually renders a judgment that for some reason is wrong and should not have been rendered, then that error . . . is a judicial one and the court is powerless, after the judgment becomes final, to correct it by a *nunc pro tunc* decree.").  Notably, there is no evidence in the mandamus record, such as an orally-pronounced or rendered judgment different from the one entered, that lends credence to the argument that the judgment entered was not the judgment rendered.  Real Parties

9

rely solely on conjecture to so argue. Moreover, that the judgment signed by the trial court was prepared by the prevailing party is inconsequential. *See Matter of Marriage of Dunn*, 589 S.W.2d 166, 168 (Tex.Civ.App.--Amarillo 1979, no writ)("The judgment prepared was the judgment signed."). Finally, case law is replete with failed attempts by trial courts to materially alter, by judgment *nunc pro tunc*, the terms of the original judgment rendered. *See, e.g., Humphries v. Chandler*, 597 S.W.2d 2, 3 (Tex.Civ.App.--Beaumont 1980, no writ)(concluding that deletion of a step-child from an order of determination of heirship in connection with the child's stepmother's estate was a judicial, not a clerical, change); *Dunn*, 589 S.W.2d at 168 (concluding that the addition of an income tax provision to the original divorce judgment was a judicial, not a clerical, change). Thus, the trial court's *nunc pro tunc* judgment, purporting to alter the original rendition of judgment as clerical error, is void and of no effect. *See Comet Aluminum*, 450 S.W.2d at 59.

## CONCLUSION

The October 5, 2012 take-nothing judgment was a final judgment for appellate purposes, and the trial court lacked plenary power to set it aside.[8] Accordingly, we conditionally grant Heritage's petition for mandamus and direct the trial court to vacate its order granting the motion for new trial dated January 22, 2013. We are confident that the trial court will promptly comply; our writ will issue only if it does not.

June 18, 2015

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.
Rivera, J. (Not Participating)

---

[8] Given our disposition of this issue, we need not address the additional issues raised by Heritage. *See* TEX.R.APP.P. 47.1, 52.8(d).

10