

In The
Court of Appeals
Seventh District of Texas at Amarillo

No. 07-21-00199-CV

IN THE INTEREST OF K.A., A.S.B. AKA A.A., CHILDREN

On Appeal from the County Court at Law
Moore County, Texas
Trial Court No. CL112-20, Honorable Jerod Pingelton, Presiding

January 26, 2022

OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

A.C.A. (Mother) appeals from a final order terminating her parental rights to K.A. and A.S.B. We vacate in part and affirm in part.

**_K.A._**

"For want of a nail . . ." or, in this case, "for want of reading your pleadings . . . ."

We first address the order terminating Mother's rights regarding K.A. She argues that the trial court lacked subject-matter jurisdiction to terminate that relationship. We agree.

The underlying suit (CL112-20) emanated from the consolidation of distinct suits previously assigned cause numbers CL112-20 with CL136-20. The latter implicated the parental relationship between Mother and A.S.B., while the former involved that between

Mother and K.A. In ordering consolidation, the trial court decreed that "[a]ll pleadings and other documents filed in both cause numbers prior to this date shall be deemed filed in said consolidated case, and all future filings shall be captioned under the consolidated cause number."

After consolidation, the Department of Family and Protective Services (Department) filed its first amended petition for the protection of a child, conservatorship, and termination of the parent-child relationship. It named only one child as the object of the protection, conservatorship, and termination. That child was A.S.B. K.A. was mentioned nowhere therein. Nor did the Department refer to any desire to terminate the parental relationship between Mother and K.A. in the amended pleading. Nevertheless, the trial court convened a final hearing and adjudicated Mother's rights as to both children.

There are two kinds of consolidation. One is a true consolidation while the other is for trial only. *Hong Kong Dev., Inc. v. Nguyen*, 229 S.W.3d 415, 432 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (op. on reh'g); *accord Amir-Sharif v. Cadieux*, No. 05-14-01055-CV, 2015 Tex. App. LEXIS 2814, at *3–4 (Tex. App.—Dallas Mar. 25, 2015, no pet.) (mem. op.) (stating the same); *see also Rust v. Tex. & Pac. Ry. Co.,* 107 Tex. 385, 387, 180 S.W. 95, 95 (1915) (stating that "the order of consolidation having been properly made, there remained no separable cause of action. It became but one suit . . . ."). The former merges the separate actions into a single proceeding under one docket number. *Hong Kong Dev., Inc.,* 229 S.W.3d at 432. Being so merged, they become and proceed as one suit. *Id.* That happened here, as illustrated by the language of the consolidation order. Nothing in it insinuates that the two previously independent actions were merged simply for trial purposes. Rather, the trial court ordered that all prior pleadings in the two

proceedings were deemed filed in CL112-20 and all future filings were to be captioned under CL112-20. Simply put, there no longer was a CL136-20. The order wrought a true consolidation at bar, and only one proceeding or action remained.

In that one remaining suit, the Department filed an amended petition. Such an amendment supersedes all previous ones and becomes the controlling or live pleading. *See Pisharodi v. United Biologics, L.L.C.*, No. 04-18-00324-CV, 2020 Tex. App. LEXIS 2460, at *18 (Tex. App.—San Antonio Mar. 25, 2020, pet. denied) (mem. op.). Moreover, causes of action in earlier pleadings but unmentioned in the amended document are effectively dismissed or nonsuited. *See FKM P'ship v. Bd. of Regents of the Univ. of Houston Sys.*, 255 S.W.3d 619, 633 (Tex. 2008). The same is true regarding parties; they are dismissed as effectively by omitting their names from the amended pleading as they are by entry of a dismissal order. *See In re Catholic Diocese of El Paso,* 465 S.W.3d 808, 813–14 (Tex. App.—El Paso 2015, orig. proceeding); *Woodruff v. Wright*, 51 S.W.3d 727, 731 (Tex. App.—Texarkana 2001, pet. denied). The effect is to extinguish the underlying case or controversy involving the dismissed party or claim. *See Univ. of Tex. Med. Branch at Galveston v. Estate of Blackmon*, 195 S.W.3d 98, 100 (Tex. 2006) (per curiam) (stating that nonsuit extinguishes a case or controversy from "the moment the motion is filed"). In short, the dispute becomes moot. So too does it vitiate the trial court's subject-matter jurisdiction to adjudicate the interests of the missing party when that party falls within the category of indispensable. *Nuchia v. Woodruff*, 956 S.W.2d 612, 616–17 (Tex. App.—Houston [14th Dist.] 1997, pet. denied) (op. on reh'g); *Goodman v. Summit at West Rim*, 952 S.W.2d 930, 933 (Tex. App.—Austin 1997, no pet.); *see April Sound Mgmt. Corp. v. Concerned Prop. Owners for April Sound, Inc.*, 153 S.W.3d 519, 526 (Tex.

App.—Amarillo 2004, no pet.) (noting that the absence of an indispensable party may deprive the trial court of jurisdiction).

No one can reasonably dispute that the Department's effort to amend the petition resulted in a dismissal of K.A. as a party. Again, the live pleading said nothing about him or severing the parental relationship between him and Mother; that effectuated a nonsuit or dismissal of K.A. as a party under the foregoing authorities. Nor can one reasonably dispute the indispensable status of either the parent or child in a suit ending the relationship between them. So, given K.A.'s absence as a party to this proceeding, the trial court not only lost subject-matter jurisdiction over him and his parental relationship with Mother but also lacked the authority to end that relationship.

The Department suggests otherwise because the matter was tried by the consent of the parties.[1] The problem with that is two-fold. First, K.A. was not a party, which would be a prerequisite to effectively giving consent. Second, parties cannot by consent vest a trial court with subject-matter jurisdiction over a dispute. *San Antonio River Auth. v. Austin Bridge & Rd., L.P.*, 601 S.W.3d 616, 627 (Tex. 2020). So, the remaining parties could not consent to the trial court adjudicating the interests of one over which it lacked subject-matter jurisdiction.

As previously said, for want of a nail, or in this case, the Department reviewing its live pleading, the trial court lacked jurisdiction to adjudicate the parental relationship in question and the conservatorship of K.A. Thus, we must vacate that portion of the final order.

---

[1] We find it a bit ironic that the child to whom the Department refers in its argument is A.S.B., not K.A. A.S.B. was a party. K.A. was not. It apparently missed that, too.

4

***A.S.B.***

The first issue we address regarding the child A.S.B. concerns the Department's appointment as her temporary conservator prior to termination. We are told that the trial court lacked "sufficient grounds" to make it. As we observed in *In re L.M.B.*, No. 07-19-00147-CV, 2019 Tex. App. LEXIS 8420 (Tex. App.—Amarillo Sept. 17, 2019, no pet.) (mem. op.), a final order terminating parental rights renders moot an earlier temporary conservatorship order. *Id.* at *7–8 (and cases cited therein). A final order of termination having been executed here, we overrule this issue as moot.

The remaining issues concern the sufficiency of the evidence underlying the trial court's decision to terminate the parental relationship. Mother questions the evidence underlying both the finding relating to the statutory grounds and best interest determinations of the court.[2] The pertinent standard of review is that discussed in *In re N.G.*, 577 S.W.3d at 235. We apply it here.

As for the statutory grounds warranting termination, the trial court found several. They included Mother's endangering the physical and emotional well-being of the children, *see* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E); constructively abandoning the children, *see id.* § 161.001(b)(1)(N); and failing to comply with the provision of a court order, *see id.* § 161.001(b)(1)(O). The evidence need only suffice as to one, though. *In re N.G.*, 577 S.W.3d at 234.

The evidence at bar included proof that Mother birthed four children. Her parental relationship with the two eldest were voluntarily terminated. The two youngest, K.A. and

---

[2] "Texas Family Code section 161.001(b) allows for involuntary termination of parental rights if clear and convincing evidence supports that a parent engaged in one or more of the twenty-one enumerated grounds for termination and that termination is in the best interest of the child." *In re N.G.*, 577 S.W.3d 230, 232 (Tex. 2019) (per curiam).

A.S.B., were born in August of 2019 and October of 2020, respectively. The Department removed K.A. from Mother when it discovered that 1) she and his father regularly smoked marijuana, 2) Mother eschewed taking medication to address her mental disabilities, and 3) Mother had neither a home, income, nor vehicle. This resulted in the initiation of conservatorship and termination proceedings involving K.A.

The Department placed the child with his great-grandmother (Grandmother), who lived in Oklahoma. Mother was also ordered to pursue certain services to obtain his return. Mother was current on working those services when she birthed A.S.B. Shortly thereafter, the Department initiated a separate conservatorship action involving that child, though the trial court allowed A.S.B. to remain with Mother during the interim.

Then, Mother decided to leave Texas with A.S.B. without informing the caseworker. Though her purported motive for doing so concerned a desire to see K.A., she had no intent to return to Texas. That resulted in Oklahoma law enforcement personnel intervening. Mother's location was ultimately discovered. Furthermore, A.S.B. was removed from her care and placed with Grandmother, as well. That occurred in February of 2021.

Since A.S.B.'s removal, Mother failed to attend additional counseling required of her, to comply with two requests for drug testing, and to provide her caseworker with proof of employment. Though she lives in an apartment, it belongs to her boyfriend's grandmother. And, though she has a boyfriend (D), Mother remains married to another person.

Additionally, D has multiple criminal convictions. They include convictions for theft, assault, and domestic violence. Moreover, he and Mother's uncle engaged in a quarrel

at a birthday party for K.A. It occurred when Mother and D appeared after being told before their arrival by Grandmother that D was not welcome.

Uncle also had a criminal record and served about eight years in prison. Though Grandmother permits him to interact with the children, she does not allow them to be alone during the interaction. She remains present.

Since their placement with Grandmother, the children have visited with Mother on a regular basis, both in person and virtually. During one of the in-person visits, Grandmother smelled marijuana on Mother.

Other evidence revealed that Mother twice bought groceries for her children during the numerous months they have lived with Grandmother. Yet, she provided no other financial support for them. Instead, she often solicited funds from Grandmother for her own use and care.

Nor had Mother acquired either a job or vehicle until a few days before the final termination hearing. The job consisted of part-time work at a fast-food restaurant earning $10 an hour. We found no description of the car, its condition, or its susceptibility for use as a family vehicle. Nevertheless, we assume that it was available to bring Mother to the final hearing. Instead of so journeying, she attended virtually.

Again, K.A. and A.S.B. reside with Grandmother. Grandmother has assured that the children receive attention for their medical conditions. They include K.A.'s clubfoot, which requires him to wear a brace day and night. In turn, A.S.B. was born with a heart murmur and two holes in her heart. To reiterate, Grandmother attends to and secures the requisite medical care to address those conditions, and more importantly, the children

7

do well under her care.  Grandmother also has the financial means and housing to provide the children with the stability children need.

All witnesses for the Department opined that termination was warranted and in the best interests of the child.  The caseworker believed this appropriate because Mother failed to comply with her service plan, lacked a stable home environment and income, and failed to complete all her assigned drug tests.  Such were requirements of the service plan.  Indeed, Mother's continued lack of stability despite having opportunity to improve formed a major theme throughout the proceedings.  Though the caseworker thought Mother had the ability to find stability if she so chose, she conceded that mother had yet to find same.

A parent's conduct before and after a child's birth and removal may be considered when assessing the appropriateness of termination.  *In re S.M.G.*, No. 01-17-00056-CV, 2017 Tex. App. LEXIS 5981, at *11 (Tex. App.—Houston [1st Dist.] June 29, 2017, pet. denied) (mem. op.); *In re J.E.*, No. 07-12-00449-CV, 2013 Tex. App. LEXIS 1063, at *7 (Tex. App.—Amarillo Feb. 5, 2013, no pet.) (mem. op.); *In re M.N.G.*, 147 S.W.3d 521, 536 (Tex. App.—Fort Worth 2004, pet. denied) (op. on reh'g).  Evidence of conduct before and after the birth and removal of A.S.B. appears of record.  Additionally, evidence of illicit drug use by a parent affecting a child is an example of conduct endangering the physical and emotional well-being of a child, *see In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009) (involving the use of marijuana), and *In re C.R.*, No. 07-20-00314-CV, 2021 Tex. App. LEXIS 1286, at *7–8 (Tex. App.—Amarillo Feb. 23, 2021, pet. denied) (mem. op.), even if the drug is marijuana.  *See In re J.O.A.*, 283 S.W.3d at 345–46.  The trial court had such evidence here.  Mother had no income or home with which to care for K.A. but

nonetheless regularly acquired and smoked marijuana. She had no job or visible means with which to support A.S.B. Nor did she provide regular financial support for either child; yet she continued to acquire and utilize the substance, or so Grandmother's testimony indicated. More importantly, her use occurred despite her having mental disabilities.

The same is true of conduct subjecting a child to a life of uncertainty and instability; it too endangers a child's physical and emotional well-being. *In re A.B.*, No. 04-21-00051-CV, 2021 Tex. App. LEXIS 5984, at *6–7 (Tex. App.—San Antonio July 28, 2021, no pet.) (mem. op.); *In re A.M.A.*, No. 07-16-00224-CV, 2016 Tex. App. LEXIS 10565, at *10 (Tex. App.—Amarillo Sept. 27, 2016, pet. denied) (mem. op.). The trial court also had such evidence here. Mother previously relinquishing her interest in two children, her lacking employment until days before the final hearing, her lacking a vehicle until the day of the hearing, her dependency on others to provide her a home, her working at a part-time job paying sums insufficient to support children with medical needs, and her living with a boyfriend while married to another man evinces the aforementioned instability.

Endangering conduct under § 161.001(b)(1)(D) and (E) need not be aimed at the child made subject of the termination proceeding. *In re J.F.-G.*, 627 S.W.3d 304, 312 (Tex. 2021). Nor must the child actually experience injury. *Id.* Rather, endangerment occurs when the child is exposed to loss, injury, or jeopardy. *See id.* (noting that to endanger means to expose to loss or injury or otherwise jeopardize). The totality of evidence before the trial court was enough to allow the factfinder to form a clear and convincing belief that Mother's conduct satisfied the elements of (E), at the very least. It showed that she engaged in conduct which exposed A.S.B. to loss, injury, or jeopardy. The very same evidence highlighted by the present home environment of the child, the

child's medical improvement while in that home, and mother's habitation with one convicted of violent crimes also permits the formation of the same clear and convincing belief about termination being in A.S.B.'s best interests. Consequently, the trial court had sufficient evidentiary basis upon which to terminate the parental relationship between Mother and A.S.B.

We modify the trial court's final order by vacating that portion dealing with K.A., his conservatorship, and his parental relationship with Mother. The trial court lost jurisdiction to act with regard to him when the Department omitted the child from its live pleading. We affirm the final order as modified.

Brian Quinn
Chief Justice