

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-13-00039-CV

---

TYSON RHINE AND SANDRA RHINE, Appellants

V.

PRIORITY ONE INSURANCE COMPANY, Appellee

---

On Appeal from the 71st District Court
Harrison County, Texas
Trial Court No. 12-0305

---

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Moseley

O P I N I O N

Tyson Rhine and wife, Sandra Rhine, owned a house in a semi-rural part of Harrison County and obtained fire and hazard insurance on the property from Priority One Insurance Company. After the house was destroyed by fire, Priority One denied coverage, claiming that the policy had been terminated before a claim matured and that at the time of the loss, the Rhines had already lost any insurable interest in the property due to foreclosure. The parties filed competing motions for summary judgment, and the trial court granted Priority One's motion and denied the motion filed by the Rhines. The Rhines have appealed, raising three points for review: (1) The Rhines assert that the trial court should have granted their traditional motion for summary judgment, (2) They maintain that the trial court erred in granting the combined no-evidence and traditional motion for summary judgment filed by Priority One, and (3) The Rhines claim that it was error for the trial court to have entered a take-nothing judgment in favor of Priority One and against the Rhines. We affirm the trial court's judgment.

## I.     Factual and Procedural Background

The Rhines were the owners of a house located at 1070 Ellis Drive in Waskom, Harrison County, Texas, and had obtained fire and casualty insurance from Priority One for the property, receiving a homeowners' policy which included coverage up to $200,000.00 for the dwelling itself and up to $120,000.00 for personal property contents. The coverage was for one year, commencing March 29, 2011, through March 29, 2012. It specified that the "'**Insured location**' means . . . the **residence premises**" and that "'**Residence premises**' means the **residence premises** shown on the declarations page. This includes the one or two family dwelling . . .

2

where an **insured** resides or intends to reside within 60 days after the effective date of this policy." Clarifying the residency requirement, the policy stated:

> **Vacancy.** If the **insured** moves from the dwelling and a substantial part of the personal property is removed from that dwelling, the dwelling will be considered vacant. Coverage that applies under Coverage A (Dwelling) will be suspended effective 60 days after the dwelling becomes vacant. This coverage will remain suspended during such vacancy.

The Rhines' real estate (together with any permanently attached personal property) was secured by a mechanic's lien contract with power of sale originally granted to secure Neatherlin Homes, Inc. in the payment of a promissory note given for the construction of the improvements. The obligation was prescribed to be paid in monthly installments. As of September 16, 2011, (the date that a notice of default had been sent to the Rhines on behalf of the holder of the note and lien), the Rhines were delinquent in the payment of at least nine of the note's prescribed monthly installments.

> On October 5, 2011, Priority One sent the following warning to the Rhines:

> We have been notified that the property location above appears to be vacant.[1] According to our policy, if the insured moves from the dwelling and a substantial part of the personal property is removed from the dwelling, the dwelling will be considered vacant. Coverage that applies under Coverage A (Dwelling) will be suspended effective 60 days after the dwelling becomes vacant. This coverage will remain suspended during such vacancy. All remaining coverage will be cancelled as of November 04, 2011.

---

[1] The record contains copies of documentation that there were several attempts by Priority One to send mail to the Rhines at the address of the insured house but which were returned as unclaimed, these being dated September 16, October 6 and 7, November 3, and December 21 of 2011.

If you have any questions or if the information provided is incorrect, please notify our office in writing.

The record does not reflect that the Rhines made any response to this notice.

Tyson Rhines executed a summary judgment affidavit in which he stated that the dwelling suffered a fire October 21, 2011, which rendered "parts of the home unusable."[2] That affidavit continued by saying that this first fire incident "left much of the house damaged so that we could not use all of our home. Sometimes we had to go to other people's homes for things such as showers and some nights we stayed in hotels." During the time that repairs of the damages occasioned by this fire were being performed, the home was once again "severely damaged/destroyed in a fire on November 15, 2011."

There was, however, an important event that intervened between the first fire and the second. A trustee's sale foreclosing the Rhines' ownership in the property was conducted November 1, 2011, wherein the property was struck off to Walter Mortgage Company, LLC, who was then the holder of the note and lien.

In his affidavit, Tyson went on to claim that even though the October fire had occurred and despite the fact that the holder of the lien had foreclosed some two weeks before the second fire occurred, and irrespective of the fact that "[a]ll of our household belongings had not been replaced so we were not using/occupying our home to the capacity we had before both fires," the Rhines claimed that they still "maintained the insured property as their primary residence."

---

[2] There is no coverage dispute regarding any claim that might have been made from this October fire, and there is nothing in the record to reflect the nature of the contents for which the Rhines made a claim of loss.

After having first issued several insurance checks to the Rhines,[3] Priority One stopped payment on them. On January 16, 2012, Priority One informed the Rhines that the "policy was cancelled effective November 4, 2011" and that the claim was denied due to that cancellation and also because "no coverage was in effect on the date of loss of 11/15/2011." (There is no evidence here of a dispute between the parties regarding claims by the Rhines which arose after the first fire.)

The Rhines sued Priority One, seeking "declaratory relief declaring that there exists a valid insurance contract" and damages for breach of contract, common-law fraud, and alleged violations of the Deceptive Trade Practices–Consumer Protection Act (DTPA)[4] and the provisions of Section 541 of the Texas Insurance Code.

Priority One's answer to the suit raised several defenses, including cancellation of the policy, that "Plaintiffs did not have an insurable interest in the property," "did not own the property in question," did not cooperate "in the handling of their claim," and that they failed to provide proper notice of suit as required "by Section 541 of the Texas Insurance Code and by § 17.50(a) of the Texas Business and Commerce Code (Texas DTPA)."

Next, the Rhines filed a motion for summary judgment on the ground that Priority One "failed to meet its obligations under its insurance contract." In support of the motion, the Rhines attached Tyson's affidavit to which reference is made above, copies of letters from Priority One wherein it denied coverage, a copy of the insurance policy, and a copy of a cover letter from

---

[3]Checks for $200,000.00 for the damage to the dwelling, $98,272.60 for loss of personal property, and $3,457.59 had already been issued by Priority One to the Rhines. As stated above, these were not cashed because Priority One filed a stop payment order before they were honored.

[4]TEX. BUS. & COM. CODE ANN. §§ 17.41–.63 (West 2011 & Supp. 2012).

5

Priority One that accompanied the three checks which had been issued as payment related to the second fire.

Priority One's response objected to all of the Rhines' attached summary judgment evidence (except for Tyson's affidavit) on the ground that this evidence was not served on Priority One in accord with the Texas Rules of Civil Procedure. It further objected to the Rhines' motion on the grounds that it included "[b]road statements about unfiled discovery" which it alleged were "not on file with the Court" and that the motion failed to "identify the terms of the policy that Plaintiffs allege Defendant breach[ed]." [5]

On January 24, 2013, Priority One also filed its own combined traditional and no-evidence motion for summary judgment, which it supported by attaching Tyson's affidavit and Priority One's letters cancelling the policy (despite having objected to the inclusion of those letters as part of the Rhines' summary judgment evidence). It asserted that the Rhines had no insurance policy in effect at the time of the fire because they had no insurable interest in the residence at the time of the loss due to the November 1, 2011, foreclosure. Thus, the motion claimed that the Rhines could not establish a breach of contract claim, had raised no evidence of a false misrepresentation giving rise to common-law fraud, and had "fail[ed] to identify any unfair claims practices" because Priority One's denial of coverage was proper.

The trial court denied the Rhines' motion for summary judgment February 8, 2013.

---

[5] Priority One claims that its objections to inclusion of this evidence for the court's consideration were sustained because the order denying the Rhines' summary judgment recited that "Priority One Insurance Company's objections to Plaintiffs' Motion for Summary Judgment is [sic] hereby SUSTAINED." It argues that the absence of this evidence "doomed Plaintiffs' motion," and since "the contract could not be considered by the Trial Court, Plaintiffs' motion for summary judgment was properly denied." We note that the judgment recited that objections to the motion, not objections to the summary judgment evidence, were sustained.

The Rhines responded to Priority One's motion for summary judgment, again attaching Tyson's affidavit and a copy of the insurance policy. The Rhines also attached an additional affidavit (with Sandra as the affiant) which made reference to the November fire, claiming,

> Most of our belongings were destroyed in the fire. Since the fire we have been unable to live at or use the home, and have had to rent other lodging and make other arrangements. It was my understanding that as long as we remained at the home our insurance would cover the home and our belongings. Finally, the mortgage holder has contacted us after this fire explaining that there is a possibility for us owing additional fees due to the property not being insured.

By an order dated February 25, 2013, the trial court granted Priority One's motion for summary judgment and entered a take-nothing judgment on the Rhines' claims.

The Rhines claim on appeal that the trial court's decision was erroneous because at the time of the second fire, the Rhines were still using the property as their primary residence, and "[n]owhere in the policy is ownership of the premises mentioned as a prerequisite or requirement for coverage to take effect." They further argue that because they could still owe money to the mortgage holder even though a foreclosure had taken place if a deficiency existed between the amount owed and the amount realized at the trustee's sale, they sustained pecuniary loss from the home's destruction. Employing this rationale, they state that they retained an insurable interest in the property even after the foreclosure had been completed. With respect to policy cancellation, the Rhines say that they believe that "sending a letter to Appellants stating that the insurance policy had been cancelled had no effect on the validity of the contract" and that Priority One's obligations contained in the policy remained in force and effect.

7

## II. Standard of Review

A traditional motion for summary judgment is granted only when the movant establishes there are no genuine issues of material fact and it is entitled to judgment as a matter of law. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).  We review de novo the grant or denial of a motion for summary judgment "to determine whether a party's right to prevail is established as a matter of law." *Lamar Corp. v. City of Longview*, 270 S.W.3d 609, 613 (Tex. App.—Texarkana 2008, no pet.); *see Nash v. Beckett*, 365 S.W.3d 131, 136 (Tex. App.—Texarkana 2012, pet. denied) (citing *Mann*, 289 S.W.3d at 848).

When reviewing the grant or denial of a traditional summary judgment, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Limestone Prods. Distribution, Inc. v. McNamara*, 71 S.W.3d 308, 311 (Tex. 2002) (per curiam); *Rhone–Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999).  On appeal, the movant must show that there is no material fact issue and that the movant is entitled to judgment as a matter of law. *McNamara*, 71 S.W.3d at 311; *Steel*, 997 S.W.2d at 223; *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979).

In its no-evidence summary judgment, Priority One represented that no evidence existed as to one or more essential elements of the Rhines' claims on which they would have the burden of proof at trial. *See* TEX. R. CIV. P. 166a(i).  The Rhines were then required to present evidence raising a genuine issue of material fact on the challenged elements. *See id.*  To defeat a no-evidence motion for summary judgment, the Rhines were not required to marshal all proof; the

8

response needed only point out evidence that raised a fact issue on the challenged elements. *See* TEX. R. CIV. P. 166a(i) cmt.

A no-evidence summary judgment is essentially a pretrial directed verdict. Therefore, we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict. *Wal–Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002). We must determine whether the Rhines produced any evidence of probative force to raise a fact issue on the material questions presented. *See id*.; *Woodruff v. Wright*, 51 S.W.3d 727, 734 (Tex. App.—Texarkana 2001, pet. denied). The Rhines will defeat Priority One's no-evidence summary judgment motion if they presented more than a scintilla of probative evidence on each element of their claim. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003); *Jackson v. Fiesta Mart, Inc.*, 979 S.W.2d 68, 70–71 (Tex. App.—Austin 1998, no pet.).

Where, as here, both parties file dispositive cross motions for summary judgment and the court grants one and overrules the other, we review both the grant and the denial. *Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d 184, 192 (Tex. 2007). Thus, in this case, we are to review the summary judgment evidence presented by each party, determine all questions presented, and render judgment as the trial court should have rendered. *Id.*; *Comm'rs Court of Titus Co. v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997); *Nash*, 365 S.W.3d at 136.

In our review, we consider all the summary judgment evidence in the light most favorable to the non-movant, disregarding all contrary evidence and inferences. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). When a trial court's order granting summary judgment does not specify the ground or grounds relied on for its ruling, summary

9

judgment will be affirmed on appeal if any of the theories advanced are meritorious. *Hill v. Bartlette*, 181 S.W.3d 541, 544 (Tex. App.—Texarkana 2005, no pet.) (citing *Star–Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995)).

### III. The Trial Court's Denial of the Rhines' Motion and Grant of Priority One's Motion Was Proper

#### A. The Rhines' Motion for Summary Judgment

The Rhines' sought declaratory judgment of the existence of a valid insurance contract at the time of the second fire. However, the record contains a letter from Priority One to the Rhines cancelling the policy due to vacancy of the premises—an option available to the insurer under the terms of the contract. Although the Rhines were warned that the policy would be cancelled November 4, 2011, there is no evidence that the Rhines made any response to the letter.

The Rhines' response to Priority One's allegation that cancellation of the policy was due to vacancy of the premises appears to indicate that the apparent vacancy was due to the October fire and the repairs being conducted in the home. Their motion for summary judgment states, "Anything with the home's appearance which may have given the impression that it was not in use was due to ongoing repairs from a previous fire." However, the notice of vacancy sent by Priority One occurred prior to the October fire (the first fire).

Although the Rhines' affidavits claim that "the house listed in the insurance contract was our primary residence" and that "my family still lived at the home" at the time of the November fire (even though their ownership in the property had been foreclosed on), they had not made their mortgage payments for over nine months, several letters sent to the home during the September–November timeframe remained unclaimed, and, while the Rhines' might have

10

considered the home their primary residence, there is no contradiction in the record of the claim that they had moved a substantial part of their personal property from the dwelling prior to either of the fires as alleged in Priority One's October 5, 2011, letter.

Nevertheless, we find the evidence of a lack of vacancy as of October 5, 2011, inconclusive. Because there were genuine issues of material fact regarding whether the dwelling was vacant at the time alleged in Priority One's letter, the Rhines did not meet their burden to show that they were entitled to declaratory judgment as a matter of law. The genuine fact issues with regard to the vacancy and cancellation of the policy also precluded the Rhines from establishing their breach of contract claim. Thus, denial of their traditional motion for summary judgment was proper.[6]

## B.    Priority One's Motion for Summary Judgment

In their no-evidence motion for summary judgment, Priority One argued that the Rhines had failed to produce a scintilla of evidence establishing that its denial of coverage was a false representation of fact knowingly or "recklessly [made] without knowledge of the truth." The elements of common-law fraud are:

> "(1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury."

---

[6]The Rhines' motion for summary judgment failed to address their remaining fraud, DTPA, and Texas Insurance Code violation claims.

11

*Aquaplex*, *Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009) (per curiam) (quoting *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001) (citing *Formosa Plastics Corp. v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998))); *see Johnson & Johnson Med., Inc. v. Sanchez*, 924 S.W.2d 925, 930 (Tex. 1996). "[F]raud claims require scienter." *Air Routing Int'l Corp. (Canada) v. Britannia Airways, Ltd.*, 150 S.W.3d 682, 692 (Tex. App.—Houston [14th Dist.] 2004, no pet.). Here, the record fails to include any summary judgment evidence establishing either the scienter requirement or the requirement that the Rhines relied on the denial of coverage. Thus, the no-evidence motion for summary judgment on this claim was properly granted.

Priority One also argued that the Rhines' DTPA and Texas Insurance Code claims failed because there was no evidence provided that showed a lack of good faith on the part of Priority One. The Rhines' claimed that Priority One engaged in unfair settlement practices under the Texas Insurance Code and the DTPA because "it was clear that Plaintiffs' policy covered the fire at issue in this matter." Section 541.060 of the Texas Insurance Code states,

> It is an . . . unfair or deceptive act or practice in the business of insurance to engage in the following unfair settlement practices with respect to a claim by an insured or beneficiary:
>
> . . . .
>
> (2)     failing to attempt in good faith[7] to effectuate a prompt, fair, and equitable settlement of:

---

[7]"Evidence establishing only a bona fide coverage dispute does not demonstrate bad faith." *State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42, 44 (Tex. 1998).

(A)    a claim with respect to which the insurer's liability has become reasonably clear . . . .

TEX. INS. CODE ANN. §541.060(a)(2)(A) (West 2009).

A person who sustains actual damages may bring an action against another person for those damages caused by the other person engaging in an act or practice:

(1)    defined by Subchapter B to be an . . . unfair or deceptive act or practice in the business of insurance; or

(2)    specifically enumerated in Section 17.46(b), Business & Commerce Code, as an unlawful deceptive trade practice if the person bringing the action shows that the person relied on the act or practice to the person's detriment.

TEX. INS. CODE ANN. § 541.151 (West 2009) (footnote omitted).

The Rhines' petition failed to specify which of the listed acts enumerated in DTPA, Section 17.46(b) were violated, and there was no evidence that the Rhines relied on an alleged deceptive act or practice to their detriment. Thus, the no-evidence motion for summary judgment on this claim was proper.

In order to prove unfair settlement practices under the Texas Insurance Code, the Rhines were required to show that Priority One "knew or should have known that it was reasonably clear that the claim was covered." *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 56 (Tex. 1997); *see* TEX. INS. CODE ANN. § 541.060(a)(2)(A); *Lyons v. Millers Cas. Ins. Co. of Tex.*, 866 S.W.2d 597, 599–600 (Tex. 1993). Here, the coverage was denied due to the alleged vacancy, "but when there is evidence on either side, [as there is here] the issue is a fact question." *Giles*, 950 S.W.2d at 56.

13

Also, the issue of whether it was reasonable for Priority One to conclude that the Rhines lacked an insurable interest in the property is a fact question for the jury because reasonableness is determined using an objective standard of whether a reasonable insurer would have delayed or denied payment on a claim. *Id.* (explaining difficulty in reviewing these claims in no-evidence context); *but see Aleman v. Zenith Ins. Co.*, 343 S.W.3d 817, 823 (Tex. App.—El Paso 2011, no pet.). Thus, rather than addressing the issue in the no-evidence context, we resolve the matter by analyzing Priority One's traditional motion for summary judgment.

In its traditional motion,[8] Priority One sought to establish the lack of an insurable interest due to the foreclosure proceedings. The "Homeowners" insurance policy was issued to provide "Property Coverage." It contained a condition entitled "**Insurable Interest and Limit of Liability**" clarifying that "[e]ven if more than one person has an insurable interest in the property covered, we will not be liable in any one loss . . . to the **insured** for more than the amount of the **insured's** interest at the time of loss." Written proof of loss under the policy was required to include "the interest of the **insured** and all others in the property involved including all liens on the property."[9]

There is no dispute that the Rhines' interest in the property was lost through foreclosure prior to the loss occasioned by the November fire. Therefore, the Rhines' status had been

---

[8]Priority One also filed a traditional motion for summary judgment on the ground that the policy was cancelled due to the Rhines' vacancy. We have already established that there were genuine issues of material fact related to the issue of vacancy. Thus, Priority One did not establish its entitlement to summary judgment on this theory.

[9]The policy became void if the insured "intentionally concealed or misrepresented any material fact or circumstance, made false statements or committed fraud relating to this insurance." Priority One was authorized to "cancel the policy . . . by mailing . . . notice in writing of the date cancellation takes effect" if it was "in effect for less than 60 days" and the insured submitted "a fraudulent claim." The effective date of this written cancellation could not be before the thirtieth day.

14

reduced to only that of tenants at sufferance as a result of the foreclosure sale. *Jones v. Tex. Pac. Indem. Co.*, 853 S.W.2d 791, 793 (Tex. App.—Dallas 1993, no writ).

A claimant has the burden to prove an insurable interest, which is a question of law. *Id.* at 794. "'[A]n insurable interest exists when the assured derives pecuniary benefit or advantage by the preservation and continued existence of the property or would sustain pecuniary loss from its destruction.'" *Smith v. Eagle Star Ins. Co.*, 370 S.W.2d 448, 450 (Tex. 1963) (finding that because fire destroyed home in which Smith was living, she suffered pecuniary loss in form of loss of use in home even though she did not own it); *Valdez v. Colonial Cnty. Mut. Ins. Co.*, 994 S.W.2d 910, 914 (Tex. App.—Austin 1999, pet. denied); *St. Paul Fire & Marine Ins. Co. v Daughtry*, 699 S.W.2d 321, 322 (Tex. App.—San Antonio 1985, writ ref'd n.r.e). Thus, ownership or title in the home was not necessarily mandatory in order for the Rhines to have an insurable interest in the home. *See Smith*, 370 S.W.2d at 450.

Citing to the above caselaw, the Rhines assert that the foreclosure did not divest them of their insurable interest. In a case almost factually identical to this one, the Dallas Court of Appeals held otherwise. *Jones*, 853 S.W.2d at 793. In that case, William and Elaine Jones owned a home subject to a mortgage interest held by Henry and Diana Martin. *Id.* When the Joneses defaulted on their mortgage payments, the Martins foreclosed. *Id.* Even after the foreclosure, the Joneses remained in the house, but their status was reduced to that of tenants at sufferance; the house burned down eleven days later. *Id.* The Joneses sued on the policy to collect for the structural damage to the home. Upholding the trial court's grant of the insurance company's motion for summary judgment, the court found that "[a]s tenants at sufferance, the

Joneses were subject to immediate eviction. They had no future legal interest in the dwelling, and diminished motive and opportunity to protect the property." *Id.* at 795. Thus, our sister court concluded there was no insurable interest in the dwelling. *Id.* Likewise, we find that the Rhines had no insurable interest in the dwelling at the time the second fire took place and that Priority One's summary judgment on this point was proper.[10]

In *Jones*, the insurance company paid the Joneses for personal property damage resulting from the fire. This begs the question of whether the same is required in this case. In other words, did the Rhines establish a pecuniary loss, and thus, an insurable interest in their personal property? A review of the policy reveals the following statement: "We do not cover: . . . property of roomers or tenants." Because the Rhines were tenants at sufferance, the policy prevented their recovery for personal property damage.[11] Accordingly, summary judgment on Priority One's traditional motion was proper as to personal property damage as well.

## IV. Conclusion

We affirm the trial court's judgment.


Bailey C. Moseley
Justice


Date Submitted:     August 13, 2013
Date Decided:       August 20, 2013

---

[10]The policy contains specific provisions with regard to the mortgagee's right to claim insurance proceeds under the policy even after foreclosure.

[11]The record fails to contain evidence that identifies the property that was damaged in the November fire as opposed to that damaged by the October fire.

16