

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-18-00026-CV

_____

FRANKLIN L. MARTIN A/K/A FRANK L. MARTIN,
AND A/K/A FRANK MARTIN, Appellant

V.

SOUTHSIDE BANK, Appellee

On Appeal from the 188th District Court
Gregg County, Texas
Trial Court No. 2013-1135-A

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

From 2004 through 2008, Franklin L. Martin[1] obtained three loans from Southside Bank (the Bank), each loan payable in monthly installments, secured by a different parcel of improved real property in Gregg County, Texas, and documented by a separate promissory note and a deed of trust. Until 2011, Martin paid all payments as scheduled, but then began to struggle with payments and defaults on the loans. Martin's struggle with timely paying the loans[2] continued

---

[1]Martin is also known as Frank L. Martin and Frank Martin.

[2]Martin's struggle with payment and default was rather involved. Between May 2011 and April 2012, Martin missed six payments on the first loan, four payments on the second loan, and four payments on the third loan. On May 2, 2012, the Bank's trustee, James D. VanDeventer, notified Martin that he was in default and that, to catch up on past-due installments, he would have to pay $6,233.70 on the first loan, $3,828.12 on the second loan, and $6,967.52 on the third loan. Martin testified that, to cure the defaults, he made an extra payment June 1 on each loan, which payments were not shown in the Bank's ledgers. Martin also testified that he made regular payments on all three loans for the months of June and July.

On July 11, 2012, the Bank sent another notice of default representing that Martin was due in the amount of $6,233.70 on the first loan, $3,961.28 on the second, and $6,967.52 on the third. Martin testified that, around this time, he spoke with Melvin Reynolds, Jr., Senior Vice President of Lending for the Bank, who allegedly noticed some discrepancy between the Bank's ledger and the notices of default and told Martin he would have to get back with him to determine how much he owed. Martin's deposition testimony also showed that he told Reynolds that the Bank's ledgers failed to show the payments he had made on June 1, 2012, on each of the accounts. Martin testified, "Reynolds . . . attempted in June and July to get me an amount of money that I owed on these amounts, and he never could provide that to me."

On July 3, 2012, at the Bank's request, Jett Appraisal Services returned its appraisal of the properties. Martin informed Reynolds that the Jett appraisal had severely undervalued the properties. According to Reynolds, the Bank had initially appraised these same properties before agreeing to loan Martin any money. Reynolds testified that appraiser Michael Reeder valued Tract 1 at $145,000.00 in 2004 and $200,000.00 in 2005. According to Reynolds, Reeder also appraised Tract 2 at $125,000.00 and Tract 3 at $255,000.00. Reynolds testified that Martin also informed him, in August 2012, that a neighboring, unimproved, fifty-four-acre tract had recently been sold to the Sabine Independent School District for $814,000.00.

Martin made regular payments on all three loans in August. Yet, the Bank sent another notice of default on August 14, which, despite the alleged extra June 1 payment, stated that Martin owed $6,233.70 on the first loan, $4,007.34 on the second, and $ 6,967.52 on the third. Martin admitted that he failed to make payments on all three notes in September. Each deed of trust provided for both an acceleration of debt and a trustee's sale on default.

On September 20, 2012, the Bank sent Martin a notice of the acceleration of debt, which demanded that he repay the entire amount of the remaining debt. With respect to the first loan, the notice of acceleration stated that the Bank was demanding $77,400.05, plus accrued interest and attorney fees, even though the Bank's ledger reflected that the balance on the account at that time was $75,896.14. With respect to the second loan, the letter sought $77,360.95, plus accrued interest and attorney's fees, even though the Bank's ledger reflected a balance of $73,878.92. The demand on the third loan was for $115,192.57, plus accrued interest and attorney fees, in spite of the Bank's ledger

2

until March 5, 2013, when the Bank caused the three properties to be sold at nonjudicial foreclosure at prices that were substantially below not only the balances Martin owed, but also the values of the respective tracts of real estate according to three different appraisers, including Jett Appraisal Services, that was contracted and instructed by the Bank to value only the land, without improvements.[3]

reflecting a balance of $113,637.38.  The Bank gave Martin thirty days to pay the balances on all three loans or face foreclosure.

Martin testified that he spoke to VanDeventer in an effort to prevent foreclosure.  According to Martin, VanDeventer stated that legal fees owed amounted to $8,000.00 at the time and that he would accept $5,000.00 up front and $1,000.00 every month after that for three months to stave off the foreclosure.  Martin made regular payments on all three notes in October and testified that, on October 25, 2012, he had delivered a cashier's check to VanDeventer's law firm in the amount of $5,100.00. VanDeventer averred, "After discussions with Martin, Southside Bank agreed to postpone the [foreclosure] sales for one month to allow Mr. Martin to reinstate the Notes.  The sales were postponed when Martin made a single payment for each note plus paid attorney's fees in the amount of $5,100.00."

Although the ledgers do not reflect any payment made by Martin in November, Martin testified that he made payments at the Bank's Tyler branch.  In any event, a notice of a December foreclosure sale was sent to Martin.  Martin made regular payments in December on all of the notes and further testified that he had delivered a cashier's check made payable to the Bank for $5,834.83 on December 3, which was never reflected in any of the Bank's ledgers, but which was marked as received by Reynolds.  According to VanDeventer, the cashier's check and December payments by Martin postponed "the December sale . . . to allow Martin the opportunity to reinstate the Notes."  On December 11, the Bank sent another notice of acceleration of the debts on all three loans, again reflecting balances owed that did not match the Bank's ledgers.

On December 21, 2012, Martin filed a petition for voluntary bankruptcy, which was eventually dismissed as a result of Martin's failure to file required forms.  On December 31, 2012, the Bank credited Martin for what was referenced as a legal expense fee on the first loan totaling, $2,661.93, and legal expense fees on the other two loans totaling $3,254.97.  Three days later, the ledgers credited Martin $1,253.59 for legal fees on all three accounts.  Martin testified that he could not understand how the Bank was applying the funds he was sending to them.  He also added that there was a payment made in January that was not credited to any account but was later located by Reynolds.

On February 8, 2013, the Bank sent notices to Martin that it would foreclose on each property by holding a trustee's sale on March 5, 2013.  At the trustee's sale, held at the time and place specified in the notices of sale, the Bank acquired the three tracts for credits on the loan balances.  Martin admitted that he had received notice of the trustee's sale and that the notes had been in default before the foreclosure.

[3]Jett testified that appraisal standards require consideration of improvements on property, that it is not customary to exclude the value of improvements in an appraisal, but that he was specifically instructed by Ginger Hines, the Bank's Vice President of Special Assets, to conduct a land only appraisal.  Hines testified that she told Jett that the purpose of the appraisal was to ascertain the value of the properties in foreclosure.  According to Hines, Jett's appraisals would be used to determine the Bank's bid at the foreclosure sale.  Jett agreed that there was value to the improvements Martin made on the properties, which would have "[a]bsolutely" increased their value had they been considered[,] but

The following sets out key data regarding the three loans:

| Key Facts | First Loan | Second Loan | Third Loan |
|---|---|---|---|
| Year Loan Originated | 2004 | 2006 | 2008 |
| Original Loan Amount | $118,181.30 | $100,000.00 | $150,000.00 |
| Real Estate Collateral | 5.025 acres (Kilgore, TX) "Tract 1" | 2.7672 acres (Liberty City, TX) "Tract 2" | 15.72 acres (Liberty City, TX) "Tract 3" |
| Jett (Bank) Appraisal (Land Only) | $50,000.00 | $50,000.00 | $100,000.00 |
| Reeder (Bank) Appraisal | $200,000.00 | $125,000.00 | $255,000.00 |
| Thieman (Martin) Appraisal[4] | $190,000.00 | $300,000.00 | $390,000.00 |
| Bank's Purchase Price at Foreclosure | $25,000.00 | $40,000.00 | $80,000.00 |

Martin did not seek to set aside the sales,[5] but sued the Bank for wrongful foreclosure and breach of contract.[6] Martin's claims for wrongful foreclosure alleged that the Bank (a) sent notices that did not comply with the deeds of trust and (b) purposefully chilled the bidding at the

---

reiterated that the Bank had only hired him to conduct an appraisal of the land only, without improvements. Accordingly, Jett admitted that his appraisals did not reflect the actual value of the tracts of land that had formed the starting point for the Bank's bid at the foreclosure sale. "[M]ere inadequacy of consideration is not grounds for setting aside a trustee's sale if the sale was legally and fairly made." *Am. Sav. & Loan Ass'n of Houston v. Musick*, 531 S.W.2d 581, 587 (Tex. 1975).

[4]Martin hired Jett's former employer, Thieman & Associates, to re-appraise all three tracts as of the March 5 foreclosure sale.

[5]"Once a party elects to let a sale stand and recover at law for damages, he is forever barred from attacking the trustee's deed." *T & M Sales & Envtl. Sys., Inc. v. LSS Invs.*, No. 13-03-659-CV, 2005 WL 2785603, at *6 (Tex. App.—Corpus Christi Oct. 27, 2005, no pet.) (mem. op.) (quoting *Owens v. Grimes*, 539 S.W.2d 387, 390 (Tex. Civ. App.—Tyler 1976, writ ref'd n.r.e.)).

[6]Although the Bank counterclaimed against Martin to seek collection of the deficiency balances owed after the foreclosure, it later dismissed its counterclaim and does not now seek collection of any deficiency.

foreclosure sale. His claims for breach of contract alleged that the Bank failed to stop foreclosure, despite Martin's substantial compliance with the Bank's stated requirements to cure his defaults.

From a take-nothing summary judgment[7] against his claims, Martin appeals. Because (1) summary judgment was proper as to Martin's claims for wrongful foreclosure on the first and third loans, (2) a fact issue exists as to Martin's claim for wrongful foreclosure of the second loan, and (3) summary judgment was proper as to Martin's claims for breach of contract, we reverse and remand to the trial court for further proceedings as to only Martin's claim for wrongful foreclosure on the second loan and affirm as to all other claims.

After an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment claiming there is no evidence to support an essential element of the nonmovant's claim or defense. TEX. R. CIV. P. 166a(i). A summary judgment is subject to de novo review by appellate courts. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). In making the required review, we deem as true all evidence which is favorable to the nonmovant, we indulge every reasonable inference to be drawn from the evidence, and we resolve any doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

---

[7]After more than two and a half years after Martin filed suit, the Bank filed a no-evidence motion for summary judgment, arguing that there was no evidence to support Martin's claims. Martin's response to the Bank's motion asserted that there was an irregularity in the foreclosure proceeding because of the Bank's failure to send notices required by the deed of trust with respect to one of the properties and its manipulation of the appraisal, which had "directly formed the basis for the bid that the bank made at foreclosure." Martin also argued that the Bank "spent months reassuring and misleading . . . Martin that they did not want his properties and would work with him," but breached their modification agreement.

5

A no-evidence summary judgment is essentially a pretrial directed verdict. Therefore, we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict. *Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002). We must determine whether the plaintiff produced any evidence of probative force to raise a fact issue on the material questions presented. *See id.*; *Woodruff v. Wright*, 51 S.W.3d 727, 734 (Tex. App.—Texarkana 2001, pet. denied). The plaintiff will defeat a defendant's no-evidence summary judgment motion if plaintiff presented more than a scintilla of probative evidence on each element of its claim. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003); *Rhine v. Priority One Ins. Co.*, 411 S.W.3d 651, 657 (Tex. App.—Texarkana 2013, no pet.).

*(1)      Summary Judgment Was Proper as to Martin's Claims for Wrongful Foreclosure on the First and Third Loans*

Normally, wrongful foreclosure is proven by showing "(1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price." *Great N. Energy, Inc. v. Circle Ridge Prod., Inc.*, 528 S.W.3d 644, 674 n.34 (Tex. App.—Texarkana 2017, pet. denied) (quoting *Campbell v. Mortg. Elec. Registration Sys., Inc.*, No. 03-11-00429-CV, 2012 WL 1839357, at *3 (Tex. App.—Austin May 18, 2012, pet. denied) (mem. op.)). When the mortgagee deliberately chills the bidding at a nonjudicial foreclosure sale and the mortgagor seeks to recover damages, not to set aside the sale, elements two and three need not be proven. *Charter Nat. Bank-Houston v. Stevens*, 781 S.W.2d 368, 371 (Tex. App.—Houston [14th Dist.] 1989, writ denied); *see Reeves v. Wells Fargo Bank, NA*, No. EP-14-CV-00187-DCG, 2015 WL 11598711, at *3 (W.D. Tex. Sept. 4, 2015) (mem. op.)

(citing *Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 726–27 (5th Cir. 2013); *see Waggoner v. Deutsche Nat'l Bank Tr. Co.*, 181 F.Supp.3d 445, 449 n.3 (S.D. Tex. 2016)).

In our review of the foreclosure proceedings, we found no violation of Section 51.002 of the Texas Property Code, the statute governing nonjudicial foreclosure. *See* TEX. PROP. CODE ANN. § 51.002 (West Supp. 2017). Additionally, as to the first and third loans, Martin agreed to waive all requirements for an appraisal, if any, and agreed that the Trustee could sell all properties at a foreclosure sale to the highest cash bidder. Even though the summary judgment evidence showed that the notices of acceleration contained amounts different than the balances showed on the Bank's ledgers, "the foreclosure statute does not require that [Martin] be notified of the amount due," and the deeds of trust also contain no such requirement. *See Wright v. Cambridge Condo. Owners Ass'n*, No. 05-99-00169-CV, 2000 WL 254298, at \*5 (Tex. App.—Dallas Mar. 8, 2000, no pet.) (not designated for publication).

As to the first and third loans, we find no defect in the foreclosure proceedings, either under the statute or under the respective deeds of trust. For that reason, summary judgment was proper that Martin take nothing on his claims for wrongful foreclosure on those two loans.

*(2)* *A Fact Issue Exists as to Martin's Claim for Wrongful Foreclosure of the Second Loan*

However, our review of the foreclosure proceedings on the second loan reveals an irregularity. "Texas courts have consistently held that the terms set out in a deed of trust must be strictly followed." *Univ. Sav. Ass'n v. Springwoods Shopping Ctr.*, 644 S.W.2d 705, 706 (Tex.

1982).  Strict compliance with the deed of trust is required to protect the debtor.  *Id.*  Here, the

deed of trust securing Tract 2 read:

> Lender shall give notice to Borrower before acceleration following Borrower's breach . . . . The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.

On May 2, 2012, the Bank notified Martin that he would have to make a $3,828.12 payment to

cure the default of nonpayment of past-due installments on the second loan.  It further informed

Martin that, unless the default was cured, the Bank would accelerate the debt once thirty days

expired after the notice.  However, the notice failed to inform Martin of his right to reinstate after

acceleration and the right to bring a court action, as required by the express terms of the deed of

trust.  In July and August, the Bank sent another notice of default, which again failed to include

the required notice.  The notice of acceleration, written in September, also failed to inform Martin

of his rights under the deed of trust.  Thus, the summary judgment evidence demonstrated that

there was an irregularity or defect in the foreclosure proceedings.  *See Douglass v. Country Wide

Home Loans, Inc.*, No. 2-03-334-CV, 2005 WL 1542658, at *9 (Tex. App.—Fort Worth June 30,

2005, no pet.) (mem. op.).[8]  Therefore, Martin presented more than a scintilla of probative evidence

with respect to the first element of wrongful foreclosure.

---

[8]Whereas actual knowledge of the right to reinstate after acceleration or to bring a lawsuit is sufficient, there was no evidence that Martin had such knowledge.  *See Jasper Fed. Sav. & Loan Ass'n v. Reddell*, 730 S.W.2d 672, 675 (Tex. 1987).

Next, while a plaintiff asserting wrongful foreclosure must generally show a grossly inadequate sales price, Martin was not required to meet this element if he brought forth sufficient evidence to show actions on the part of the Bank to chill the bid. *See Stevens*, 781 S.W.2d at 371. This is because "[s]ociety and the injured mortgagor are properly served through money damages, if that election has been made, where deliberate acts of the mortgagee had a 'chilling' effect on the bidding." *Id.* at 374. Here, Martin presented evidence that the Bank's determination for the bid at the sale was determined based on the Jett appraisal. Jett testified that appraisal standards required him to consider improvements on Tract 2 when conducting the appraisal, but that he did not do so because the Bank specifically directed him to conduct a land-only appraisal. Because of Jett's appraisal, the Bank's bid was $40,000.00. However, the Thieman appraisal, introduced by Martin, set the fair market value of Tract 2 on the day of the foreclosure at $300,000.00. While "a sales price of more than fifty percent of property value is not grossly inadequate as a matter of law," additional disparities with respect to "inadequate consideration [may create] . . . a fact question." *Terra XXI, Ltd. v. Harmon*, 279 S.W.3d 781, 788 (Tex. App.—Amarillo 2007, pet. denied); *Stevens*, 781 S.W.2d at 374 n.2; *see Del Mar Capital, Inc. v. Prosperity Bank*, No. 01-14-00028-CV, 2014 WL 5780302, at *6 (Tex. App.—Houston [1st Dist.] Nov. 6, 2014, no pet.) (mem. op.). Viewing this evidence in the light most favorable to Martin leads us to conclude that there was a genuine issue of material fact with respect to the second element of wrongful foreclosure. *See Senger Creek Dev., LLC v. Fuqua*, No. 01-15-01098-CV, 2017 WL 2376529, at *9 (Tex.

9

App.—Houston [1st Dist.] June 1, 2017, no pet.) (mem. op.); *see also Halter v. Allied Merchants Bank*, 751 S.W.2d 286, 288 (Tex. App.—Beaumont 1988, writ denied).

With respect to the last element of wrongful foreclosure, the question of whether an irregularity decreased the foreclosure sale price is a fact question, not a matter of law. *Stevens*, 781 S.W.2d at 374; *see Allen v. Pierson*, 60 Tex. 604, 607 (1884)); *King v. Hill*, No. 07-10-0198-CV, 2012 WL 967351, at *3 (Tex. App.—Amarillo Mar. 22, 2012, no pet.) (mem. op.). Accordingly, we find that summary judgment with respect to the second loan was improper as to Martin's claim for wrongful foreclosure.

*(3)     Summary Judgment Was Proper as to Martin's Claims for Breach of Contract*

We also conclude that summary judgment was proper regarding Martin's claims for breach of contract.

> To prevail on a breach of contract claim, a party must establish the following elements:  (1) a valid contract existed between the plaintiff and the defendant; (2) the plaintiff tendered performance or was excused from doing so; (3) the defendant breached the terms of the contract; and (4) the plaintiff sustained damages as a result of the defendant's breach.

*West v. Triple B Servs., LLP*, 264 S.W.3d 440, 446 (Tex. App.—Houston [14th Dist.] 2008, no pet.).  "The elements of a valid contract are:  (1) an offer, (2) an acceptance, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding." *Gonzales v. Dunnam & Dunnam, L.L.P.*, No. 10-06-00381-CV, 2008 WL 2209957, at *2 (Tex. App.—Waco May 28, 2008, no pet.) (mem. op.) (citing

*Prime Prods., Inc. v. S.S.I. Plastics, Inc.*, 97 S.W.3d 631, 636 (Tex. App.—Houston [1st Dist.] 2002, pet. denied)).

Martin argues that the Bank's willingness to work with him to delay or stop the foreclosures constituted new contracts, which the Bank breached by foreclosing on his properties. Yet, the summary judgment evidence fails to demonstrate the existence of any contracts between Martin and the Bank other than the written terms of the promissory notes and deeds of trust executed by him. Although Martin and Reynolds both testified that Martin sought a loan modification plan that would allow him to avoid the foreclosures, they both also testified that the Bank never agreed to a modification plan. Instead, the summary judgment evidence established that Martin was required to pay all past-due sums and bring every loan current in order to avoid foreclosure, and even Martin admitted that he was in default at the time of the foreclosure sales. Accordingly, we find that the trial court properly granted the Bank's no-evidence motion for summary judgment on Martin's breach of contract claims.

We reverse the trial court's summary judgment with respect to Martin's wrongful foreclosure claim on the second loan and remand this matter to the trial court for further proceedings. In all other respects, the trial court's judgment is affirmed.


        Josh R. Morriss, III
        Chief Justice

Date Submitted:  August 23, 2018
Date Decided:   September 12, 2018

11