

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-20-00035-CV

_____

PAUL K. CLAYTON, Appellant

V.

WALMART INC. AND WAL-MART STORES TEXAS, L.P., Appellees

On Appeal from the 62nd District Court
Hopkins County, Texas
Trial Court No. CV43911

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Justice Stevens

MEMORANDUM OPINION

After Paul K. Clayton slipped on salad dressing in his local Walmart, he sued Walmart Inc. and Wal-Mart Stores Texas, L.P. (collectively Walmart), for premises liability.[1] The trial court granted Walmart's motion for summary judgment, which argued that Clayton could not establish his premises liability claim since there was no evidence that it had actual or constructive knowledge of a dangerous condition on the premises. As a result, the trial court entered a take-nothing judgment against Clayton.

On appeal, Clayton argues that he established a genuine issue of material fact on the issue of constructive knowledge. Because we disagree, we affirm the trial court's judgment.

## I. Standard of Review

"The grant of a trial court's summary judgment is subject to de novo review by appellate courts." *Padron v. Catholic Diocese of Austin*, No. 06-18-00087-CV, 2019 WL 1548637, at *2 (Tex. App.—Texarkana Apr. 10, 2019, no pet.) (mem. op.) (citing *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003)). "In making the required review, we deem as true all evidence which is favorable to the nonmovant, we indulge every reasonable inference to be drawn from the evidence, and we resolve any doubts in the nonmovant's favor." *Id.* (citing *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005)).

"A no-evidence summary judgment is essentially a pretrial directed verdict. Therefore, we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as

---

[1]Though it contained allegations of negligence, Clayton's petition asserted a premises liability case. *See United Scaffolding, Inc. v. Levine*, 537 S.W.3d 463, 472, 479 (Tex. 2017) (explaining the difference between premises liability and general negligence claims).

we apply in reviewing a directed verdict." *Id.* at \*3 (citing *Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002)). "We must determine whether the plaintiff produced any evidence of probative force to raise a fact issue on the material questions presented." *Id.* (citing *Rodriguez*, 92 S.W.3d at 506; *Woodruff v. Wright*, 51 S.W.3d 727, 734 (Tex. App.—Texarkana 2001, pet. denied)). "The plaintiff will defeat a defendant's no-evidence summary judgment motion if plaintiff presented more than a scintilla of probative evidence on each element of its claim." *Id.* (citing *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003); *Rhine v. Priority One Ins. Co.*, 411 S.W.3d 651, 657 (Tex. App.—Texarkana 2013, no pet.)).

## II.     The Constructive Knowledge Requirement

"In premises-liability cases, the scope of a landowner's responsibility turns on the plaintiff's status." *Id.* (citing *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 767 (Tex. 2010)). It is undisputed that Clayton was a business invitee.

"[G]enerally, a property owner owes invitees a duty to use ordinary care to reduce or eliminate an unreasonable risk of harm created by a premises condition about which the property owner knew or should have known." *Id.* (alteration in original) (quoting *Advance Tire & Wheels, LLC v. Enshikar*, 527 S.W.3d 476, 481 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (citing *Austin v. Kroger Tex., L.P.*, 465 S.W.3d 193, 203 (Tex. 2015) ("A landowner has a duty to exercise reasonable care to make the premises safe for invitees.")). "A premises owner's duty toward its invitee does not, however, make the owner an insurer of the invitee's safety." *Id.* (quoting *Austin*, 465 S.W.3d at 203; *Wal-Mart Stores, Inc. v. Gonzalez*, 968 S.W.2d 934, 936 (Tex. 1998)). "Applying the general rule, the Texas Supreme Court 'has repeatedly described a

3

landowner's duty as a duty to make safe or warn against any concealed, unreasonably dangerous conditions of which the landowner is, or reasonably should be, aware but the invitee is not.'" *Id.* at *4 (quoting *Austin*, 465 S.W.3d at 203).

Here, for Walmart to be liable for Clayton's injury, Clayton had to prove

(1) that [the defendant] had actual or constructive knowledge of some condition on the premises; (2) that the condition posed an unreasonable risk of harm to [the plaintiff]; (3) that [the defendant] did not exercise reasonable care to reduce or to eliminate the risk; and (4) that [the defendant's] failure to use such care proximately caused [the plaintiff's] personal injuries.

*Id.* at *3 (quoting *Levine*, 537 S.W.3d at 471–72 (alterations in original) (quoting *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 296 (Tex. 1983))). Only the first requirement is at issue.

## III. Clayton's Summary Judgment Evidence Did Not Raise a Genuine Issue of Material Fact

### A. Clayton's Summary Judgment Evidence

In response to Walmart's no-evidence motion for summary judgment, Clayton attached his own deposition testimony. Clayton said that the slip and fall happened in the salad dressing aisle of the Walmart, which was busy. It was his habit to walk down the store aisle by aisle. Clayton testified that he had previously been to the salad dressing aisle before he slipped but did not notice any spill. After he had been in the store for about an hour and fifteen minutes, Clayton returned to the salad dressing aisle to retrieve an item he had forgotten and slipped on "[m]ayo on [the] floor" or "something white."

After the slip, Clayton said he "was looking for help," "knew somebody was in that area because [he'd] been seeing him around," saw Walmart employee Joe Taylor "an aisle or two

4

over," showed him the spilled salad dressing, and advised him to clean it up.[2] After the incident, Taylor told Clayton that he had cleaned up the spill and that "there was a lot down there." Clayton walked to the front of the store to notify another Walmart employee, Melissa Farmer, that he had salad dressing on his foot. According to Farmer, Clayton told her that he had not reported the incident before he spoke with her but wanted to report it to a manager.

When asked whether Walmart had any opportunity to clean up the substance before he had encountered it, Clayton said, "For me, I didn't see any bottle. I thought it looked like it had been -- like they had tried to clean it up and maybe didn't get all of it. . . . From what I'm thinking, I don't know." Clayton admitted that no one from Walmart told him that they had tried but failed to clean up the spill. Clayton was shown a photograph of "a ranch dressing container that had the cap knocked off that was sitting on the shelf." The photographs showed that the ranch dressing bottle with the missing cap had been misplaced on the bottom shelf next to large jars of mayonnaise.

Kevin Caraway, an assistant manager, testified that Walmart employees check the aisles periodically for spills, other hazards, and mis-stocked items. According to Caraway, Walmart policy requires any employee who comes across a spill to "guard it until somebody else comes by, and then somebody else cleans it up." Caraway also said that, if a Walmart employee had

---

[2]Clayton argues that the following portion of his testimony showed that Taylor was in the proximity of the spill for an hour and a half:

> I was looking for help because, you know, I'd been there, like I said, an hour and a half. So I knew somebody was in that area because I'd been seeing him around. So I seen him. He was, like, an aisle or two over, and I let him know what happened . . . .

We disagree with Clayton's characterization of this testimony, which does not show how long Taylor had been in the area. It also does not show that Taylor was ever in the salad dressing aisle.

found the salad dressing bottle, they would have taken it off the floor and to the claims area. Caraway testified that, after the spill, the area was cleaned for the sake of customer safety but that no one had located the top of the ranch dressing bottle.

### B.    Analysis

Clayton argues that there are genuine issues of material fact concerning whether Walmart had constructive knowledge of the salad dressing spill.[3]   Under Texas law, a plaintiff can establish knowledge of a potentially harmful condition in one of three ways:

> (1) prove the defendant caused the harmful condition; (2) prove the defendant knew of the harmful condition and negligently failed to remove it; or (3) prove the harmful condition was present for so long that it should have been discovered or removed in the exercise of reasonable care.

*Brookshire Food Stores, L.L.C. v. Allen*, 93 S.W.3d 897, 900 (Tex. App.—Texarkana 2002, no pet.).

Clayton first argues that Walmart caused the harmful condition because the salad dressing was improperly stocked on the bottom shelf with the cap removed.  That said, he introduced no evidence showing that it was misplaced by a Walmart employee instead of a customer.

As for the second and third method of establishing constructive knowledge, Clayton argues that Taylor had been in the area of the spill, which was "clearly conspicuous because it was a large puddle of ranch dressing" and because Walmart employees were to periodically inspect aisles for spills.  Even so, the Texas Supreme Court has held that "evidence [that] the premises owner's employee was in close proximity to the dangerous condition immediately

---

[3]There is no evidence of actual knowledge of the spill.

before the plaintiff fell, without more, is legally insufficient to charge the premises owner with constructive notice." *Id.* at 901 (citing *Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 813, 816 n.1 (Tex. 2002)). "There must also be some evidence showing the dangerous condition existed long enough that the premises owner had a reasonable opportunity to discover it." *Id.* (citing *Reece*, 81 S.W.3d at 813). This "time-notice rule" prevents the imposition of "liability on a storekeeper for the carelessness of another over whom it had no control or for 'the fortuitous act of a single customer' that could instantly create a dangerous condition." *Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 816 (Tex. 2002) (quoting *Coffee v. F.W. Woolworth Co.*, 536 S.W.2d 539, 541 (Tex. 1976)).

Here, there is no evidence of when the spill occurred or who caused the spill, and Clayton himself testified that he did not see the spill when he first walked through the salad dressing aisle. Clayton's argument "merely indicates that it was *possible* for the premises owner to discover the condition, not that the premises owner reasonably *should* have discovered it." *Id.* "Constructive notice demands a more extensive inquiry," but Clayton presented nothing negating the possibility that the spill could have occurred moments before he fell. *Id.* "Without some temporal evidence, there is no basis upon which the fact[-]finder can reasonably assess the opportunity the premises owner had to discover the dangerous condition." *Id.* As a result, there was no evidence Walmart knew of the harmful condition or that it was present for so long that it should have been discovered and cleaned.

Because we find the trial court's summary judgment proper, we overrule Clayton's point of error on appeal.

7

## IV.     Conclusion

We affirm the trial court's judgment.


Scott E. Stevens
Justice

Date Submitted:        December 9, 2020
Date Decided:          December 11, 2020